CALEB W. LORING, trustee, *vs.* SALISBURY MILLS.

Suffolk.   Nov. 9, 1875.— June 26, 1876.   Sept. 7.— 8, 1876.   LORD, J.,
absent.
April 3, 4, 1877.— July 30, 1878.   AMES, J., absent.
ENDICOTT, J., did not sit.

A trustee, appointed by deed, cannot maintain an action at law for an injury to the trust property before he became trustee, whereby the legal title passed to a third person; but the court may allow him to amend by changing the action at law into a suit in equity, under the St. of 1865, *c.* 179.

If a corporation issues a certificate of stock to A. as trustee, and has notice of the name of the *cestui que trust,* and, on A.'s wrongfully transferring the certificate, issues a new certificate without making any inquiry, it is liable to the rightful owner, if he is injured thereby, without proof of fraud or collusion between the corporation and the trustee.

If a trustee has authority to sell personal property only with the consent of the *cestui que trust,* a married woman, and pledges a portion of the property without such consent, for his own debt, the invalidity of the transaction is not affected by the direction of the *cestui que trust,* (not shown to have been acted on by the trustee,) to pledge such portion for her benefit, or by the assent of the *cestui que trust* to a sale by the trustee of another portion of the trust property; and letters of her husband, not proved to have been known to or authorized by her, cannot affect her rights.

If a trustee has, by the terms of the trust, authority only to pay the income to the *cestui que trust* as it accrues, and not by way of anticipation, he has no right to sell the trust property to reimburse himself for advances to the *cestui que trust.*

If a corporation issues stock to A. as trustee, and, with knowledge of the name of the *cestui que trust,* issues a new certificate to one to whom the trustee has, in violation of the trust, transferred the stock, it is no bar to an action against it for the wrong done to the *cestui que trust,* that part satisfaction has been received from the trustee.

TORT for an illegal issuing of certificates of stock by the defendant corporation.   Writ dated December 30, 1872.   At the trial in this court, before *Morton,* J., without a jury, the following facts appeared :

On March 10, 1853, an indenture was executed by Elizabeth B. Crowninshield of the first part, Francis B. Crowninshield, trustee, of the second part, and William Mountford of the third part, reciting that a marriage was intended shortly to be had and solemnized between the parties of the first and third parts, and by the terms of which Elizabeth B. conveyed to Francis certain personal property in trust, to pay the net income to her during coverture, taking her sole receipt therefor, "after such income

accrues, and such income not at any time to be paid by way of anticipation," with provisions in case of the termination of the coverture. The indenture also contained the following clauses :

" And upon the further trust that the trustee under this instrument shall and may dispose of any part of the trust property, and the proceeds of such sale, and also any other proceeds of the trust property, invest and reinvest from time to time, and at all times, as he shall think discreet; and shall and may execute all deeds or other instruments convenient or proper to that end ; and the purchaser or purchasers of said trust property shall not be bound in any manner to see to the application of the purchase money or consideration therefor. Provided, however, that said trustee shall first obtain the written approbation of said Elizabeth of such sales and investments, if she shall be at the time thereof within the United States of America."

" And in case the trustee herein named, or any trustee or trustees who may be appointed under this instrument, shall die, resign or become incapable to act, then and thereupon said trust property shall be conveyed to such other trustee or trustees as said Elizabeth may in writing appoint, to be held upon the trusts hereinbefore declared ; or if said Elizabeth be not then alive, then such appointment to be made by the judge of probate, for the time being, for the county of Suffolk, and said trust property to be conveyed and held in conformity with such appointment and said trusts herein set forth."

On August 12, 1856, an indenture was executed between Francis B. Crowninshield and George H. Rogers, by which Crowninshield resigned his trust under the above named indenture, and conveyed the trust property in his hands to Rogers, with the knowledge and consent of Mrs. Mountford. Rogers died on May 21, 1870; and on August 6, 1870, the following indenture was executed by Mrs. Mountford, her husband, and Caleb W. Loring, the plaintiff in this action : " Whereas an indenture was made, bearing date the tenth day of March, A. D. one thousand eight hundred and fifty-three, between Elizabeth B. Crowninshield of the first part, Francis B. Crowninshield of the second part, and William Mountford of the third part, by which indenture certain property belonging to said Elizabeth, in a contemplation of a marriage with said William, was assigned

and transferred to said Francis, in trust, as will more fully appear by said indenture, reference to which is hereby made as part of this instrument; and whereas said marriage was afterwards consummated between said William and Elizabeth, and said Francis resigned said trust, and George H. Rogers, of Gloucester, in the Commonwealth of Massachusetts, was appointed in his place; and whereas the said Rogers has since deceased, and the said Elizabeth, by virtue of the power to her given by said indenture, has appointed, and by these presents does now nominate and appoint, Caleb William Loring, of the town of Beverly, who is a citizen of said Commonwealth of Massachusetts, as trustee under said indenture, with all the powers and subject to all the provisions in said indenture contained. And the said Elizabeth does hereby authorize the said Caleb William Loring to receive said trust property from the executors of the will of the said George H. Rogers, or any representative of him or his estate, and does empower and authorize the said Loring to receive, take and obtain from any and all persons or corporations said trust property, and to commence and prosecute any and all actions that be necessary for obtaining possession of the same. And the said Loring on his part does hereby accept the appointment as trustee under the indenture aforesaid, and agrees to perform all the matters and duties to be done and performed by the trustee under said indenture as fully as if the same were herein specifically set forth. And it is mutually agreed between the respective parties hereto that the provisions and terms of said indenture are in full force and effect between them, the said Caleb William Loring being liable to the same extent and subject to the same obligations as are mentioned in the same."

The plaintiff also offered evidence tending to show that Rogers, while trustee, invested a portion of the trust fund held by him for Mrs. Mountford in shares in the defendant corporation, and took certificates, in some of which he was described as trustee for Mrs. Mountford, and in others as trustee simply; that the corporation had notice that he held all these shares in trust for Mrs. Mountford; that afterwards, and while trustee, he transferred these certificates to various persons, by transfers absolute in form, but in fact as collateral security for his own debts; that these certificates were surrendered to the defendant corporation

and new certificates issued by it to such persons, in the years 1867 and 1869, and the early part of the year 1870.

On these facts, and others not material to be here particularly stated, the judge found for the defendant; and reported the case for the consideration of the full court. If the finding was justified, judgment was to be entered accordingly; otherwise, such order or judgment was to be entered as the court might deem proper.

*E. D. Sohier & C. W. Loring*, for the plaintiff.

*C. B. Goodrich*, for the defendant.

GRAY, C. J. This suit cannot be maintained by this plaintiff in its present form. Whether it is considered in the nature of an action of trover, or in the nature of an action on the case for negligence, it is for an injury to the trust property while the legal title thereof was in Rogers. Before the appointment of the plaintiff as trustee, that title had passed to *bonâ fide* purchasers, and the claim against the corporation for the damages thereby occasioned was but a chose in action, which could not be transferred by mere act of parties, without the assent of the defendant, so as to enable the assignee to sue at law in his own name for what was never an injury to him or to property in which he had any legal title.

In *Salisbury Mills* v. *Townsend*, 109 Mass. 115, the point decided was that the question whether the corporation was liable for this tort could not be determined upon a bill of interpleader filed by the corporation, but only in a suit brought by the party defrauded; the court had no occasion to consider in whose name or in what form such a suit should be brought, or the difficulty, under the peculiar circumstances of the case, of maintaining an action at law; and that no such point was in the mind of the court clearly appears from the fact that the late Chief Justice, while intimating, both in the rescript and in the opinion, that the remedy was by action at law for damages, spoke of such remedy, in the rescript, as belonging to the present plaintiff, and, in the opinion, as belonging to the *cestui que trust*.

In *Ashton* v. *Atlantic Bank*, 3 Allen, 217, and in *Murray* v. *Dehon*, 102 Mass. 11, the suit was in equity, and the plaintiff had been appointed by the act of the law, and not by the act of the parties. *Judgment for the defendant.*

At the term at which this judgment was entered, the plaintiff moved that it be set aside, and that he be allowed to amend by changing the action at law into a suit in equity under the provisions of the St. of 1865, c. 179, for the reasons that the action was begun under a misapprehension of counsel, induced by the rescript in the case of *Salisbury Mills* v. *Townsend*, and that, in consequence of the lapse of time, a new action might be barred by the statute of limitations.

This motion was argued by the same counsel before the full court in September 1876.

GRAY, C. J.   The plaintiff was evidently misled by the suggestion, in the rescript in *Salisbury Mills* v. *Townsend*, 109 Mass. 115, that his remedy was at law.   By virtue of the terms of the original indenture, and of the power of appointment executed in accordance therewith, he has clearly become, in equity, the assignee of any rights of action for injuries to the trust property before his appointment.   Justice therefore requires that he should have the opportunity of trying the question whether he can maintain his claim in equity against the defendant.

*Amendment allowed.*

The plaintiff thereupon filed, by way of amendment, a bill in equity, in which Mrs. Mountford was joined as a party plaintiff. Hearing, upon the pleadings and proofs, before *Ames, J.,* who reported the case to the full court, for the entry of such decree as law and justice might require.   The report, after stating the facts in regard to the marriage settlement, the death of Rogers, and the appointment of Loring, as above set forth, proceeded as follows :

On April 25, 1857, on the organization of the defendant corporation, Rogers, as trustee, subscribed the sum of $15,000 to its capital stock, and on April 28, 1858, on payment of the last instalment, a certificate, in the following form, was issued to him : " Be it known that George H. Rogers, trustee for Mrs. E. B. Mountford, is proprietor of one hundred and fifty shares in the capital stock of the Salisbury Mills, which shares are transferable by an instrument in writing, to be recorded by the clerk of the company ; and when such transfer shall have been recorded, and this certificate surrendered to the treasurer of the company

a new certificate or certificates shall be issued." In July, 1858, Rogers agreed to take eighty more shares of the original stock, for which he paid on July 17; and a certificate dated July 15, 1858, was issued to " George H. Rogers, trustee." On July 26, 1858, Rogers, as trustee, subscribed for twenty shares more of the original stock, and took a certificate therefor as trustee.

On January 12, 1859, the corporation voted to increase its capital stock in the sum of $250,000. Rogers took one hundred and twenty-five shares, being his proportion, and on January 31, 1859, paid the sum of $1250 in cash, and gave his individual notes on time for $11,250, and received a certificate for the one hundred and twenty-five shares, as " trustee for Mrs. E. B. Mountford." The notes of Rogers were subsequently paid. The moneys paid for these three hundred and seventy-five shares were taken by Rogers from the trust under the indenture, and were all charged by Rogers in his account of the trust fund rendered to Mrs. Mountford under date of January 8, 1866, which account was approved by Mr. and Mrs. Mountford. The corporation had no knowledge of this account until after the decease of Rogers.

On or about May 21, 1861, Rogers made a transfer of the before mentioned eighty shares, by an instrument in writing on the back of the original certificate, by which he transferred to Nathan Pierce thirty-five shares, and to Charles U. Cotting, attorney of Elizabeth Joy, forty-five shares, as collateral security for his note of $3500. At the time of the record of this transfer, the original certificate for eighty shares was surrendered, and a certificate for thirty-five shares was issued to Nathan Pierce, as collateral security for the note of George H. Rogers, for $3500, dated May 21, 1861 ; and a certificate for forty-five shares was issued, absolute in terms, to Charles U. Cotting, as attorney for Miss Joy. Pierce transferred the thirty-five shares to Rogers, as trustee, on April 30, 1862, and a certificate was issued accordingly. The forty-five shares transferred to C. U. Cotting, attorney, after several subsequent transfers to different banks, as security for the note of George H. Rogers, duly recorded by the clerk of the corporation, and certificates issued, were re-transferred to George H. Rogers, trustee, on December 15, 1862, and a certificate issued accordingly. Rogers, meanwhile, by orders

from the holders, receipted for all the dividends but one. This evidence was admitted against the defendant's objection.

On March 12, 1862, Rogers, by an instrument in writing on the back of the original certificate to him for twenty shares, transferred to M. W. Shepard five shares; to E. P. Pierce, ten shares; to John G. Davis, five shares; and, in an account of the trust fund, rendered to Mrs. Mountford on January 8, 1866, credited her with the proceeds of twenty shares sold.

On December 11, 1862, the defendant corporation voted that its capital stock be increased to the extent of $250,000, and that every stockholder of record, on December 11, should be entitled to his *pro rata* proportion of the new stock, at such time and in such form as the directors might elect, provided that no stock should be issued for a fraction of a share. The directors, on December 18, 1862, voted that a dividend of thirty-three and one third per cent. be made to stockholders of record of date the 11th instant; and that the increase of capital stock voted by the stockholders on the 11th instant be called in, on the 1st day of January, 1863. Rogers took his proportion of this stock, and a certificate for one hundred and eighteen shares, dated January 1, 1863, issued to "George H. Rogers, trustee."

These shares were credited, in the stock ledger kept by the company, to the account of "George H. Rogers, trustee;" and there were to his credit in this account, after the sale of twenty shares as above stated, four hundred and seventy-three shares. The dividends on these shares were entered in the dividend books of the company in the name of "George H. Rogers, trustee," and were receipted for in one receipt on the books by Rogers, until and including the dividend in January, 1867. Rogers held no shares as trustee for any other person; he was, individually, owner from time to time of shares in the Salisbury Mills; but, in the books of the company, his individual acccunt was kept separately from his account as trustee.

On January 11, 1867, Rogers transferred thirty-five of the shares for which he originally held the certificate of eighty shares, dated July 15, 1858, to William A. Pew, trustee, by an absolute transfer on the back of the certificate, purporting to be for value received, which transfer was presented to the clerk of the corporation, and by him recorded on the same day, and new certificates issued.

On January 26, 1869, Rogers transferred forty-five of the shares, part of the certificate of eighty shares, to John Botume, Jr., by an instrument in writing on the back of the certificate, purporting to be for value received. This transfer was presented to the clerk of the corporation, and by him recorded on March 15, 1869, and a new certificate issued in conformity.

Of the shares for which Rogers held the certificate for one hundred and eighteen shares, dated January 1, 1863, he on September 6, 1869, made an absolute transfer of forty of these shares to John Botume, Jr.; on September 15, 1869, forty to H. H. White, cashier; on September 22, thirty-eight shares to John Worster; all purporting to have been made for value received. These transfers were presented to the clerk of the corporation on February 18, 1870, for record, and by him recorded on the same day.

Of the shares for which Rogers held the certificate for one hundred and fifty shares, dated April 28, 1858, he, on January 24, 1870, transferred, by an instrument in writing on the back of said certificate, forty shares to John Botume, Jr. The certificate, with the transfer thereon, was presented to the clerk of the corporation on February 25, 1870, and on that day recorded. A certificate was issued to Botume for forty shares, and to Rogers, "as trustee for Mrs. E. B. Mountford," for one hundred and ten shares. Rogers took the dividends on the shares transferred to William A. Pew, in January, 1867, and the dividends in April, July and October, 1867, and in January, 1868, by order from William A. Pew. The transfers of these shares were made without the knowledge of Mr. or Mrs. Mountford, except so far as such knowledge may be inferred from the facts reported; and Mrs. Mountford was, at the time the transfers were made, in the United States, but there was no evidence that the defendant knew this fact.

The by-laws of the corporation have prescribed the form in which certificates of shares shall be issued, which is as follows:

" Be it known that              proprietor of        share in the capital stock of the            Salisbury Mills which share              transferable by an instrument in writing to be recorded by the clerk of the company, and when said transfer shall have been recorded and the certificate surrendered to

the treasurer of the company, a new certificate or certificates shall be issued.                                          President.

"Boston,                18   .                Treasurer."

On January 8, 1866, Rogers rendered to Mrs. Mountford an account of the trust fund in his hands, which was examined and approved by Mrs. Mountford and her husband. The account commences October 1, 1856; the debits amount to the sum of $120,609.76, and consist of cash paid, furniture delivered to Mrs. Mountford, of losses sustained upon sales by Rogers of a large number of manufacturing stocks, of property unsold and on hand at its nominal valuation, and of the purchase of four hundred and ninety-three shares in the stock of the Salisbury Mills, less a deduction by credit of twenty shares sold in 1862. The credit side amounts to $120,366.68, consisting of profits made upon the sale by Rogers of a large amount of manufacturing stocks, upon the profit of a sale made by Rogers of a dwelling-house on Beacon Street, which was part of the original trust property; showing a balance due to Rogers of $243.08, which sum was credited to balance the account, and was charged to and taken from the income account. Rogers also rendered an account from October 1, 1856, to January, 1866, showing receipts and payments of income, and a balance to the credit of Mrs. Mountford for $6036.31 at the termination of the account, which was subsequently paid to her. Rogers also rendered an income account, dated January 1, 1868, commencing February 1, 1866, and ending March 20, 1867, showing a balance due to Rogers of $6255.27, which includes a balance of interest of $105.28 against Mrs. Mountford; and on March 1, 1868, Rogers rendered an income account, commencing March 20, 1867, with a debit of the above balance due to Rogers of $6255.27, which shows a balance of $5269.14 against Mrs. Mountford, including $121.83, balance of interest. No objection was made to these accounts by Mrs. Mountford during the lifetime of Rogers, or at any time since.

The plaintiff introduced two letters written by Mrs. Mountford and received by Rogers, in one of which, dated March 25 1867, she requested him to sell on her behalf four shares in the Merrimack Manufacturing Company, or such portion as he might think fit; and in the other, dated October 16, 1868, she requested him to sell for her benefit three shares in the Merrimack Manufacturing Company.

On June 25, 1870, George I. Marsh, one of the executors of Rogers, rendered an income account to Mrs. Mountford, com· mencing on March 1, 1868, with a debit of the above mentioned balance of $5269.14, and ending on May 21, 1870, showing a balance due to Rogers of $6295.65, which includes a debit of balance of interest against Mrs. Mountford of $671.23. This account was adjusted by Mrs. Mountford and Marsh, as executor, without the consent or knowledge of the defendant, its directors or any of its officers, and without notice to them. The adjustment is stated upon the account in these words : " The claim set forth in this account has been adjusted this day by payment of the sum of fifteen hundred dollars, and the same is hereby discharged. George I. Marsh, Executor. March 19, 1873."

At some time in 1862, after the transfer hereinbefore mentioned of thirty-five shares to Pierce and of forty-five shares to Cotting, Mrs. Mountford had notice of the sale and transfer of twenty shares on March 1, 1862, and did not in any manner make any objection to the defendant, its directors or officers, and did not notify them not to permit Rogers to transfer the shares which he held in the Salisbury Mills. Charles Mifflin, the brother in law of Mrs. Mountford, some ten years ago was at the office of the Salisbury Mills, and he was asked why Mrs. Mountford was selling her stock ; shortly afterwards he asked this question of Mr. and Mrs. Mountford, and they replied that they were not selling it.

The defendant offered in evidence three letters addressed by Mrs. Mountford to George H. Rogers, which were found at his decease among his papers. The plaintiff objected to their admission, because there was no evidence of any pledge or sale of shares in the Salisbury Mills, in accordance with these letters, or any act done in consequence thereof, and because they were not known to the defendant corporation, and for other reasons. The judge admitted them.

The first letter, dated June 3, 1863, requested Rogers, as trustee, to sell shares of stock in certain corporations, but not mentioning the defendant, or such part of them as he might think it right so to dispose of, and to reinvest the money which might accrue from the sale of the property mentioned, in such manner as might appear to him best.

The second letter, dated October 21, 1868, was as follows: " As the trustee of the trust property conveyed to you by my brother, I wish you to dispose of the house No. 158 Beacon Street, to E. A. Boardman, Esq., for the sum of $24,500, less the mortgage. I also wish you to sell the following stocks, in addition to those before mentioned: say, one share Boston and Lowell Railroad, and twenty shares Connecticut River Railroad; and I wish you to invest all the proceeds, with any balance on hand, (not already invested in five shares Merrimack Manufacturing Company,) in the shares of the Salisbury Mills; and for this object you may dispose of as many as wanted, from those you hold as trustee of my income, at a valuation of two hundred and fifty dollars a share, which is less than the market price. I further wish that, as my agent, you buy for me the house No. 101 Beacon Street, at a cost of thirty-three thousand dollars, and cause the deed to be made in my name; and in order to pay for the same, you appropriate all my surplus income in your hands, and the proceeds of the Salisbury Mills stock before alluded to; and in order to avoid at present the sale of any more of the Salisbury Mills stock, you may hire the necessary amount on the pledge of said shares, to make up the required amount to pay for said house."

The third letter, dated September 29, 1866, was as follows: " I hereby authorize and request you to hire for me the sum of 3000 dollars, on the security of some of my stock in the Salisbury Mills."

Mr. Mountford addressed two letters to Rogers, without dates, which were found, after the death of Rogers, with his papers, and were also admitted in evidence, subject to the plaintiff's objection. In one of them, he proposed " our borrowing money on some of the Salisbury stock;" and, in the other, he said: " My need of money is very imminent; you must sell stock, I think, if you cannot borrow the money, only not Merrimack, Amoskeag or Manchester Print."

The estate of Rogers was represented insolvent, and commissioners were appointed, to whom the plaintiff Loring, as trustee. presented a claim "for damages by reason of his conversion of one hundred and fifty-eight shares in the Salisbury Mills to his use by transferring the same to different individuals, as collateral for

his own debt." The claim was allowed in the sum of $21,867, upon which sum the plaintiff has received two dividends, one of forty, the other of thirty per cent.

The executors of Robert C. Hooper proved against the estate of Rogers the amount of a note for $6000, for which they held forty shares in the Salisbury Mills as collateral security, and were allowed $5969, the amount of the note of Rogers less a deduction of interest, upon which the plaintiff Loring received the dividends, by order of the executors, he having paid to them the amount of a note given by Rogers for $6000, and for which they held forty shares of the Salisbury Mills, by an absolute transfer originally made to John Botume, as hereinbefore stated, which were in fact held by Hooper as collateral security for said note.

The plaintiff Loring has redeemed sundry shares, without any notice to the defendant of the amounts severally claimed by the parties holding the shares.

The plaintiffs seek to recover against the defendant corporation for the damages sustained by reason of the conversion by Rogers of the shares held by him as trustee of Mrs. Mountford, with interest, less the seventy per cent. dividends paid by the estate of Rogers.

The plaintiffs, in answer to an inquiry by the court, said they did not allege any fraud or intentional collusion with Rogers on the part of the officers of the defendant corporation; and they did not allege any notice, except such as might be inferred from the character of the various certificates issued.

Neither the directors of the defendant corporation, nor its officers, had any knowledge or information of the consideration or purpose for which Rogers transferred the shares; or any knowledge that he was acting in fraud of his duty as trustee, except so far as the same may be inferred from the facts reported.

The defendant contended that the plaintiffs were not entitled to maintain their action for any supposed breach of trust by Rogers; that Rogers, by the terms of his subscription, and of the certificates issued to him, was the proprietor of the shares, and authorized to transfer them by complying with the by-laws of the corporation which prescribe the mode of transfer; that Mrs. Mountford, by recognizing the subscription of Rogers for shares in the defendant corporation, conferred upon him a power

to do everything, according to the by-laws of the corporation, incidental to his subscription and ownership ; that the marriage settlement conferred upon Rogers, as trustee, an absolute authority to transfer; that Mrs. Mountford, by her letters to Rogers, authorized him to sell the Salisbury Mills shares, or to pledge them as security for money borrowed ; that the defendant corporation was not a trustee of Mrs. Mountford, and had no duty to perform in relation to the trust conferred upon Rogers; that no fact had been established, upon which the defendant could be charged with any wrongful act or omission; that proof against the estate of Rogers, for damages resulting from a conversion by him of the shares, ratified the original transfers ; that the plaintiff Loring, by redeeming the shares, without notice to the defendant of the amount claimed by the holders, was estopped from proceeding against the defendant for damages; that Mrs. Mountford, by adjusting the balance due from her to the estate of Rogers, as shown by the account rendered to her by the executor of Rogers, without notice to the defendant, was estopped from setting up any claim against the defendant, resulting from the fraud of Rogers.

The case was argued in April 1877, by the same counsel.

GRAY, C. J.   When the holder of a certificate of shares in a corporation is the absolute owner, his assignment and delivery thereof will pass the title to the assignee ; and the latter, upon surrendering the former certificate, may obtain a new one in his own name. *Stone* v. *Hackett*, 12 Gray, 227.   Gen. Sts. *c.* 60, §§ 9, 10, 13.   St. 1870, *c.* 224, §§ 22, 23, 26.   If the holder appears upon the face of the old certificate to be the absolute owner, and the corporation has no notice that the fact is otherwise, it may safely issue a new certificate to the assignee, which, if taken in good faith and for a valuable consideration, will vest a perfect title in him.   *Salisbury Mills* v. *Townsend*, 109 Mass. 115.   *Pratt* v. *Taunton Copper Co.* 123 Mass. 110.   But, for the protection of the rights of the lawful owner of the shares, the corporation is bound to use reasonable care in the issue of certificates : if, by the form of the certificate or otherwise, the corporation has notice that the present holder is not the absolute owner, but holds the shares by such a title that he may not have authority to transfer them, the corporation is not obliged, with-

out evidence of such authority, to issue a certificate to his assignee; and if, without making any inquiry, it does issue a new certificate, and the rightful owner is injured by its negligent and wrongful act, the corporation is liable to him, without proof of fraud or collusion. All the authorities affirm such liability where the corporation has notice that the present holder is a trustee and of the name of his *cestui que trust*, and issues the new certificate without making any inquiry whether his trust authorizes him to make a transfer. *Lowry* v. *Commercial & Farmers' Bank*, Taney, 310. *Bayard* v. *Farmers' & Mechanics' Bank*, 52 Penn. St. 232. *Atkinson* v. *Atkinson*, 8 Allen, 15. *Shaw* v. *Spencer*, 100 Mass. 382. *Fisher* v. *Brown*, 104 Mass. 259. *Duncan* v. *Jaudon*, 15 Wall. 165.

The cases of transfer of stock by the Bank of England,* cited by the learned counsel for the defendant, depended, as was pointed out by Chief Justice Taney, in *Lowry* v. *Commercial & Farmers' Bank*, upon the peculiar provisions of acts of Parliament. Taney, 335. The case of *Duncan* v. *Luntley*, 2 Macn. & Gord. 30; *S. C.* 2 Hall & Twells, 78, was decided upon the ground that the bill alleged that the act of the officers was unauthorized by the company. And the latest English case upon the subject goes quite as far as any of the American authorities in protecting equitable rights in shares held in trust. *Shropshire Union Railways* v. *The Queen*, L. R. 7 H. L. 496.

Upon the evidence, there can be no doubt that the defendant corporation had notice that all the shares in question were held by Rogers in trust for Mrs. Mountford. At the organization of the corporation, Rogers subscribed for one hundred and fifty shares, and took out a certificate in this form: " Be it known that George H. Rogers, trustee for Mrs. E. B. Mountford, is proprietor of one hundred and fifty shares in the capital stock of the Salisbury Mills, which shares are transferable by an instrument in writing, to be recorded by the clerk of the company; and when such transfer shall have been recorded, and this certificate surrendered to the treasurer of the company, a new certificate or certificates shall be issued." In 1858, Rogers subscribed succes-

---

* *Hartga* v. *Bank of England*, 3 Ves. 55. *Bank of England* v. *Parsons*, 5 Ves. 665, 669. *Pearson* v. *Bank of England*, 2 Cox Ch. 175. *Davis* v. *Bank of England*, 2 Bing. 393, 407.

sively for eighty and for twenty more shares, and took the certifi-
cates therefor in the name of " George H. Rogers, trustee," with-
out naming his *cestui que trust*. But in 1859, upon the corpora-
tion increasing its capital stock by one half, Rogers, then holding,
as we have seen, certificates for two hundred and fifty shares,
namely, one hundred and fifty · as trustee for Mrs. Mountford,
and the additional one hundred as trustee simply, took the pro-
portion of the new stock, to which he was entitled on the whole
two hundred and fifty shares, in a single certificate for one hun-
dred and twenty-five shares, as " trustee for Mrs. E. B. Mount-
ford," thereby clearly signifying that he held all the old shares
as well as the new, being three hundred and seventy-five shares
in all, in trust for her. In 1862, Rogers sold the twenty shares
subscribed for in 1858, and accounted to Mrs. Mountford for the
proceeds thereof, and the remaining three hundred and fifty-five
·shares continued to be held by him upon the same trust. In
1863, under a vote of the corporation further increasing its capi-
tal stock by one third, and allowing each stockholder of record
to take his *pro rata* proportion, Rogers took a certificate for one
hundred and eighteen shares (being one third of three hundred
and fifty-five, excluding fractions) in the name of " George H.
Rogers, trustee." He then held four hundred and seventy-three
shares, the whole of which and of the dividends accruing thereon
were credited on the books of the corporation in one account to
" George H. Rogers, trustee," and the dividends, as they were
paid, were receipted for by him in one receipt upon those books.

The corporation, thus having distinct notice that Rogers held
all these shares as trustee for Mrs. Mountford, was bound, upon
the principles already stated, when he afterwards undertook to
transfer the shares, to inquire whether the terms of the trust
authorized him so to do.

By the indenture of trust, the trustee was authorized to sell,
invest and reinvest the trust property, only upon first obtaining
the written approbation of Mrs. Mountford, the *cestui que trust*,
if at the time within the United States; and it appears that she
was within the United States at the times of all the sales and
transfers complained of.

The invalidity of these sales and transfers is not affected by
Mrs. Mountford's knowledge of and assent to the sale of the

twenty shares by Rogers in 1862, nor by her written assent to his sale of other property, nor by her request (which is not shown to have been acted on by him or known to the defendant) to pledge some of her shares in the defendant corporation for her benefit. · The letters of her husband, not proved to have been authorized by her, cannot affect her rights. As Rogers, by the terms of the trust, had no authority to pay the income to Mrs. Mountford, except as it accrued and not by way of anticipation, he had no right to sell the trust property to reimburse himself for advances to her, and her settlement with his executor of a claim for such advances is no bar to this suit.

The transfers complained of having been made by the defendant corporation without due inquiry into the authority of Rogers to make them, and being invalid against the *cestui que trust*, and the new trustee appointed in the place of Rogers not being able, as we have already held, for technical reasons, to maintain an action at law against the corporation, he is clearly entitled to maintain this bill in equity. *Ashton* v. *Atlantic Bank*, 3 Allen, 217.

Rogers and the corporation both contributed to the wrong done, and the proof of the claim against the estate of Rogers, one of the wrongdoers, was no affirmance of the validity of his acts, and is no bar to a suit against the corporation, the other wrongdoer, except to the extent of the satisfaction received by the dividends out of the estate of Rogers. *Elliott* v. *Hayden*, 104 Mass. 180.

The result is, that the plaintiff is entitled to the relief prayed for, and the form of the decree must be settled before a single judge.                              *Decree for the plaintiff.*