Order appealed from reversed, and original order made by surrogate affirmed, with costs.

---

Marin L. B. Cooper, as Sole Surviving Trustee under the Last Will and Testament of Mary T. Wood, Deceased, Respondent, *v.* The Illinois Central Railroad Company, Appellant, Impleaded with Charles C. Macy and William F. Pendleton.

*Will — bequest of specific legacies with remainder to executors in trust — at expiration of what time the estate will be presumed to have been settled by the executors — liability of a company for the discharge from registry of bonds held in trust; upon the application of only one of two trustees — when brokers selling them are not negligent.*

Where the will, dated in 1868, of a testatrix, who died in 1882, after directing the payment of the testatrix's debts, and the payment of two legacies to grandchildren, in case they should attain majority, gives the balance of her estate in trust for certain purposes, to her executors, only one of whom survived her death in 1882, it will be presumed that at the time of such surviving executor's death in 1887, he had performed all the duties devolving upon him as executor, and that whatever property he then had in his possession was held by him only as trustee for the purposes of the trust created by the will, and

passed to two substituted trustees, including bonds which the original executor and trustee had procured to be registered in his name as executor.

*Semble,* that such bonds, although containing a provision that, after such registry had been noted thereon, no transfers of them should "be valid unless made on the said books by the registered holder in person, or by his attorney duly authorized, and noted on the bond," may be transferred by the substituted trustees.

The discharge of such bonds from registry, so as to make them payable to bearer, is not a ministerial act and can be properly effected only upon the joint application of both of the two substituted trustees, and if the company issuing the bonds discharges them from registry, upon the application of one of the substituted trustees, made without the knowledge or consent of the other, and the trustee procuring such discharge sells them and converts the proceeds to his own use, the company is liable to the other substituted trustee for their value.

*Semble,* that when bonds stand upon the books of a corporation, registered in the name of a trustee, it is the duty of the corporation, before permitting a transfer, to inquire concerning the trust and the trustee's authority. If it fails in this duty, and injury comes to the beneficiary through a wrongful transfer by the trustee, to which the corporation is a party, the corporation is liable.

The fact that the bonds when first presented to the brokers, through whom the delinquent trustee finally sold them, were registered in the name of the original executor, does not charge the brokers with negligence, as, in the absence of evidence that they had knowledge of the condition of the trust estate, or of the death of the original executor, they were entitled to assume that the change in registration had been properly made.

APPEAL by the defendant, The Illinois Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff as against the said defendant, entered in the office of the clerk of the county of New York on the 3d day of October, 1898, upon the report of a referee.

*Fisher A. Baker,* for the appellant.

*John J. Crawford,* for the respondent.

Judgment affirmed, with costs, on opinion of referee.

Present — VAN BRUNT, P. J., PATTERSON, O'BRIEN, INGRAHAM and McLAUGHLIN, JJ.

The following is the opinion of the referee:

HAMILTON ODELL, Referee:

By her will Mary T. Wood gave the rest and residue of her estate to trustees, in trust, to hold and manage the same for the benefit of her daughter during the latter's life, and upon her death to pay over

such rest and residue to the daughter's children. The will directed the executors and trustees to "convert all real estate into personalty, by a sale and conveyance of the same," and to "invest said rest, residue and remainder of my estate safely at interest in such way and manner" as they might deem best. The testatrix died in 1882. Only one of the trustees, John W. Sedgwick, survived her. He died in April, 1887. By an order of the Supreme Court, made in January, 1888, Marin L. B. Cooper (the plaintiff) and Clarence W. Sedgwick were "appointed and substituted in the place and stead of Ebenezer W. Arms and John W. Sedgwick, deceased, as trustees under the said will of Mary T. Wood, deceased, to carry out said unexecuted trust created under said will for the benefit of said Mary A. Sedgwick, and vested with the same title in and to said property so held in trust, and with the same rights, powers, duties and privileges as were vested in and possessed by the original trustees in said will named." At the time the said order was made the trust property consisted in part of the twelve mortgage bonds of the defendant The Illinois Central Railroad Company, which are the subject of this controversy. These bonds, when issued, were ordinary coupon bonds, payable to "holder" on January 1, 1951, but contained this provision: "The holder hereof may have the ownership of this bond registered on the books of the said railroad company, such registry being noted on the bond, after which no transfers shall be valid unless made on the said books by the registered holder in person, or by his attorney duly authorized and noted on the bond; but the same may be discharged from registry by being in like manner transferred to bearer, after which it shall be transferable by delivery." Availing himself of this permission, John W. Sedgwick, on January 23, 1886, caused the bonds to be registered in his name, "Executor of the estate of Mary T. Wood." Clarence W. Sedgwick and the plaintiff were the executors of his will. They took possession of the bonds, which were then, and which they allowed to remain, in a tin box in a small vault or safe in a safe deposit company. The plaintiff had possession of the key of the box, and his co-trustee, Clarence W. Sedgwick, had possession of the key of the safe. In May, 1895, Clarence W. Sedgwick obtained possession of the bonds without the plaintiff's consent or knowledge, and presented them to the defendant railroad company and procured them to be transferred to bearer

and so registered.   Having thus made them transferable by delivery, he sold them through the defendants Macy & Pendleton, appropriated the proceeds to his own use, and a few weeks later died.   In his complaint the plaintiff sets forth substantially the more material facts above narrated (without identifying the alleged malefactor), and avers that the defendants Macy & Pendleton had knowledge that the bonds were part of the trust fund referred to, and as relief he demands that the defendants be required "to replace to the plaintiff, as trustee, bonds of like kind and value as those so sold and disposed of," or to account to the plaintiff for the value thereof.

The railroad company objects that the plaintiff has failed to show any title to the bonds; that is, as I understand it, that the title to the bonds never vested in him and his co-trustee.   The argument is that the bonds were registered in the name of John W. Sedgwick, executor; that it was expressly stipulated upon their face that in case of registration on the books of the company no transfer should be valid "unless made on the said books by the registered holder in person, or by his attorney duly authorized, and noted on the bond;" that the bonds were not transferred by the registered holder or by his attorney, but by Clarence W. Sedgwick acting as trustee; that such transfer was unauthorized and irregular and did not operate to divest the title of the estate of Mary T. Wood, but was wholly inoperative and void.   My opinion is that the objection is not well founded.   Mary T. Wood died in 1882, thirteen years before the transfer of the bonds by Clarence W. Sedgwick.   The plaintiff testifies that her estate has not yet been settled.   There can be no reasonable doubt that all the duties of the executor as such were performed prior to his death in 1887, and that whatever property of the estate then remained in his hands he held only as trustee for the purposes of the trust created by the will.   The will is dated in 1868.   It directs the payment of the debts of the testatrix, and gives two legacies to two grandchildren in case they live to become twenty-one years of age.   All the rest of the estate is given in trust.   In the absence of proof to the contrary, it may be safely presumed, I think, that the debts have been paid and that the legacies either were paid or lapsed by the death of the legatees during minority and fell into the residue of the estate.   (One of the legatees was, probably, the Clarence W. Sedgwick above

mentioned.) It follows that, no matter in whose name the bonds were registered, they formed part of the trust fund, the title to which was in John W. Sedgwick as trustee at the time of his death, and in Clarence W. Sedgwick and Cooper, the plaintiff, as substituted trustees, at the time of the transfers in question. The bonds were in their possession as such substituted trustees. They were the only legal representatives of the Wood estate. The railroad company recognized their title and their right to have the bonds transferred under the order of January 4, 1888. Under the circumstances it seems plain to me that the objection that the substituted trustees took no title to the bonds ought not to be sustained.

It is denied by all the defendants that the plaintiff has established any cause of action. This requires an examination of the plaintiff's claim. Briefly stated, it is (as against the railroad company) that the company wrongfully permitted Clarence W. Sedgwick, one of the substituted trustees, to change the registration of the bonds from the name of John W. Sedgwick, executor, to bearer, so making them transferable by delivery and enabling Sedgwick to convert them to his own use. It is insisted in the plaintiff's behalf that the claim is to be determined by the rules which define the liability of a corporation for permitting the transfer of trust stock or stock standing in the name of a trustee. These rules are well settled and are not disputed.

There is no presumption that a trustee has authority to sell or otherwise dispose of the property belonging to a trust estate. When stock stands upon the books of a corporation in the name of a trustee it is the duty of the corporation, before permitting a transfer, to inquire concerning the trust and the trustee's authority. If it fails in this duty, and injury comes to the beneficiary through a wrongful transfer by the trustee to which the corporation is a party, the corporation is liable. (*Loring* v. *Salisbury Mills*, 125 Mass. 138; *Bayard* v. *Farmers & Mechanics' Bank*, 52 Penn. St. 232; *Stewart* v. *Firemen's Ins. Co.*, 53 Md. 564; *Marbury* v. *Eden*, 72 id. 206; *Duncan* v. *Jaudon*, 15 Wall. 175.) In the *Loring* case the court said: " If, by the form of the certificate, or otherwise, the corporation has notice that the present holder is not the absolute owner, but holds the shares by such a title that he may not have authority to transfer them, the corporation is not obliged, without evidence of such authority, to

issue a certificate to his assignee ; and if, without making any inquiry, it does issue a new certificate, and the rightful owner is injured by its negligent and wrongful act, the corporation is liable to him without proof of fraud or collusion. All the authorities affirm such liability where the corporation has notice that the present holder is a trustee, and of the name of his *cestui que trust*, and issues the new certificate without making any inquiry whether his trust authorizes him to make a transfer." And in the *Bayard* case (at p. 238) Judge STRONG said : "A stakeholder cannot very safely pay over to him who has the legal right when he knows another to be the beneficial owner. With equal reason, at least, ought it to be held illegal for a corporation to aid in destroying the title of a *cestui que trust* to its stock without being satisfied that the trustee had authority to part with and destroy it." So in *Marbury* v. *Eden* (at p. 217), "There being no presumption of the right to sell, a corporation ought to be held affected with notice that a trustee is probably violating his trust when he attempts to sell trust property, known *to the corporation* to be such, without the production of authority for making the transfer." The point is that the corporation, by permitting transfer to a third party, becomes a participant in the spoliation of the trust estate ; it assists the trustee to do the immediate, the very act which wastes the trust estate and causes injury to the beneficiary, and which it was its duty to prevent, being put upon inquiry and so charged with knowledge that the act — that is, the disposition by the trustee of the trust property — is beyond the trustee's power and, therefore, unlawful.

There is a noticeable difference between the present case and the class of cases above referred to. The plaintiff and Clarence W. Sedgwick, as substituted trustees, had the title to and were in possession of the bonds. There is no rule that I am aware of that requires a trustee, if trust funds are invested in such securities, to have the securities registered. The new trustees had the right to have the registration in the name of the deceased executor canceled. They were not bound to have the bonds re-registered in their own names, but might restore them to their original negotiability by having them transferred to bearer. The railroad company had no right to insist that the bonds should be registered in the names of the new trustees, or registered at all. If the application

to have them transferred to bearer had been made by both trustees, the railroad company could not have refused, or, if it had refused, could have been compelled to comply with it. The mere act of taking the bonds out of registration in the name of a dead man and making them negotiable by delivery, would not have been a violation of any duty on the part of the trustees. It would not have been an act which the railroad company could have objected to, or which would have put it upon inquiry, or which would even have justified any suspicion on the part of the company that it was being done by the trustees for an improper purpose. In permitting the transfer to be made, the company would only have assisted the trustees in reducing the bonds more completely to their possession — a very different thing from uniting with them in an act of conveyance, by which the property in the bonds would pass from the trustees and be vested in some other party. So that, it seems to me, the real question is, so far as the railroad company is concerned, whether or not the company was at fault and guilty of actionable negligence in permitting the bonds to be discharged from registry and made payable to the bearer on the application of one of the two trustees.

Trustees, however numerous, constitute in law a single person. As Perry expresses it: "They all form, as it were, one collective trustee." (Perry Trusts, § 411.) When a trust or authority is delegated for private purposes, the concurrence of all who are intrusted with the power is necessary to its due execution. (*Sinclair* v. *Jackson*, 8 Cow. 583; *Wilder* v. *Ranney*, 16 Wkly. Dig. 478; *Wilbur* v. *Almy*, 12 How. [U. S.] 180.) One of several trustees, therefore, cannot make a valid contract relating to the trust estate; he cannot lease, incumber, sell or otherwise dispose of the trust property. (*Berger* v. *Duff*, 4 Johns. Ch. 368; *Hertell* v. *Bogert*, 9 Paige, 52; *Anon.* v. *Gelpcke*, 5 Hun, 255; *Brennan* v. *Willson*, 71 N. Y. 507; *Cox* v. *Walker*, 26 Maine, 504.) He may collect rents, dividends, etc. (*Williams* v. *Nixon*, 2 Beav. 472.) Payment of a mortgage to one of two trustees is a valid payment. (*Bowes* v. *Seeger*, 8 W. & S. 222.) Acts that are of a ministerial nature he may do. Acts that call for the exercise of judgment and discretion he may not do.

Now, when Sedgwick and the plaintiff became substituted trustees and were vested with the title to the trust property, the property

consisted, in part, of bonds of a special class and character, that is, of registered non-negotiable bonds of the Illinois Central Railroad Company. By the act of one trustee, with the assent and assistance of the railroad company, they were converted into bonds of a different class and character, that is, into non-registered bonds, payable to bearer. This exchange of securities, for so in fact it was, this conversion of non-negotiable securities into securities that were negotiable and transferable by delivery, was in no sense a ministerial act. The investment of trust funds, the substitution of one security for another, the doing of any act by which the character or security of the trust investment may be in any respect changed or affected, these are matters that call for the exercise of judgment and discretion, and must, therefore, be performed by the trustees jointly. Sedgwick had no right, without the assent of his co-trustee, to have the bonds changed from non-negotiable bonds to bonds payable to bearer. The railroad company should have denied his application and must abide the consequences. I think that the plaintiff is entitled to judgment against the railroad company for the value of the bonds.

As to the defendants Macy & Pendleton, the complaint should be dismissed. Their liability is asserted because, as alleged in the complaint, they " were advised and had knowledge that the said bonds were a part of the trust fund hereinbefore mentioned." The proof is that when the bonds were first presented to them they were registered in the name of " John W. Sedgwick, executor." Some days later, when left with them for sale, they had been discharged from registry, and were payable to bearer. It does not appear that they had any knowledge that the executor was dead, or any knowledge of the condition of the Wood estate. They had a right to assume that the change in registration had been properly made, and to rely upon the rule of law that an executor has title to the personal assets of the estate, with full power of disposition. (*Leitch* v. *Wells*, 48 N. Y. 585 ; *Barry* v. *Lambert*, 98 id. 308 ; *Prall* v. *Tilt*, 28 N. J. Eq. 479 ; *Bayard* v. *Farmers & Mechanics' Bank*, 52 Penn. St. 232 ; *Wood's Appeal*, 92 id. 379.) I cannot see that they are chargeable with any fault or negligence whatever.

I do not think that the plaintiff is concluded by the judgment in *Sedgwick* v. *Macy*, which is set forth in the supplemental answer of the defendants Macy & Pendleton.