CASTAING<br>v.<br>STONE.

## WALKER v. CASSAWAY.

Where the master of a steamer, by false representations, induces an agent of a third person to ship merchandize on his boat at a certain freight, and the bill of lading states that the merchandize is taken "with the privilege of re shipping," and the freight is re-shipped on another boat and brought to the port of destination, the owner of the merchandize cannot require its delivery before paying the freight due to the boat on which it was so re-shipped, the contract by the master of the second boat having been made in good faith, at a reasonable rate, with a party who held a possession apparently fair, under a bill of lading authorizing a re-shipment. The bad faith of the master of the first boat should not deprive the owners of the second boat of the remuneration due for their labour.

Where an agent with whom merchandize had been deposited, disobeys the private instructions of his principal, by shipping it contrary to the orders of the latter, a third person who acted in good faith and in confidence in a contract made as to the merchandize, and possession transferred by the agent, will not be permitted to suffer. Where one of two innocent persons must suffer, he ought to do so who has placed his property in the hands of a careless agent, rather than one who acts in good faith and on his confidence in what the agent has done.

Where a bill of lading stipulates for the privilege of re-shipment, a second carrier to whom the merchandize is transferred will have a lien on the property for his freight. He is not the mere agent of the first carrier.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Elmore* and *W. W. King*, for the appellant, contended that the second

4   19<br>115   866

WALKER
v.
CASSAWAY.

carrier was the mere agent of the first, citing 19 Wend. 329, 534.   25 Wend.
660.   C. M. Randall, for the defendant.   The judgment of the court was
pronounced by

SLIDELL, J.   The evidence in this case shows that the plaintiff had a quan-
tity of oats at Brandenburg, a town on the Ohio below Louisville.   They were
in charge of Gallagher, a merchant of that place, who was authorized to ship
the oats to New Orleans, when a written order to that effect from Davenport,
the plaintiff's agent at Louisville, should be presented to him.   The river was
low at the time, and freights were unusually high.   The captain of the steam-
er Western was at Louisville, and heard of a sudden rise in the river through
travellers who had come down the river.   He knew this would reduce
the price of freights.   He arrived at Brandenburg before the intelligence of
the rise in the river had been received ; and induced Gallagher to ship the oats
on his vessel, by untruly representing that the plaintiff's agent at Louisville had
verbally authorized him to get the oats at the freight of fifty cents per sack to
New Orleans.   A bill of lading was given by the Western, contracting to carry
and deliver the oats at New Orleans to the plaintiff.   In the body of the bill of
lading was inserted the clause, "with the privilege of re-shipping."   The
Western not making the trip to New Orleans, but proceeding to St. Louis, re-
shipped the oats at the mouth of the Ohio, on board the steamer New World, of
which the defendant was master.   This second bill of lading was to deliver the
oats at New Orleans, at a freight of twenty-two cents per sack, to one Fleming,
then the clerk of the Western, and who came to New Orleans in the New
World.   The only reason for this arragement was that the captain of the New
World was unable to advance the Western's share of the freight.

When the oats arrived at New Orleans, the plaintiff demanded them of the
master of the New World, who refused to deliver them without the payment
of freight.   The plaintiff then brought the present action to recover them.
The defendant reconvened and demanded the amount of his freight.   The
judgment of the lower court was against the plaintiff, and in favor of the de-
fendant for $382 86, the amount of his freight at twenty-two cents per sack.
The plaintiff appealed.

As the contract for the transportation of the oats from Cairo to New Orleans
was made by the defendant in good faith, at a reasonable rate, within the limit
of the total freight originally stipulated, and with a party who held a posses-
sion apparently fair, under a bill of lading authorizing a re-shipment, we think
the defendant should not be deprived of a remuneration for his labor, by reason
of the bad faith of the Western's captain.

Gallagher had been entrusted with the possession of the oats by Walker.
He was the agent to ship them to New Orleans; and although he disobeyed in-
structions, a third person who has acted in good faith upon the confidence of a
contract made and a possession transferred by him, must not be permitted to
suffer.   We see no reason for distinguishing this case in principle from the
case where a factor sells goods for a less price than his commission directs.   In
such cases the factor acts without authority, yet the sale nevertheless binds his
principal.   The buyer is not affected by the private order or direction with
which he is unacquainted.   The owner must take care whom he employs.
Where one of two innocent persons is to suffer, he ought to suffer who has
placed his property in the hands of a careless agent, rather than those who act
in good faith upon the confidence of what the agent has done.   If the public
are to be affected by undisclosed breaches of duty of this sort, or secret equi-

ties existing against a party holding a possession apparently fair, and in the usual course of business, commerce would be seriously injured.

It may be conceded for the purposes of our present inquiry, that the Western's owner would be entitled to no freight at all. But the shipper gave up the possession under a contract which contemplated the employment of a new carrier, and thus the captain of the Western was clothed, as regards third persons, with authority, to do what he has done.

It is said that the second carrier was the mere agent of the first. The authorities relied on are cases where the owner sought to make the first carrier liable for goods which, under his contract, he undertook to deliver at a certain point, though in reality only performing a part of the transportation himself. See 19 Wendell, 329, 534. 25 Wendell. 660. But we find nothing in those cases establishing the principles that in case of a contract, made as this was, with privilege of re-shipment, the second carrier would not have a lien for his remuneration.

It must be observed that the freight from Cairo claimed by the defendant fell within the amount stipulated for the whole route. See the authorities quoted in Russell on Factors, p. 78. Story on Agency, 443, 388.

The plaintiff complains that the judgment did not in terms give him a judgment for the oats. The judgment may be properly interpreted with reference to the pleadings and proceedings in the cause. The plaintiff had the oats sequestered, and his prayer was that they be delivered to him. The defendant in his answer pleaded that he had a privilege upon the oats for his freight at twenty-two cents a sack, and that the plaintiff was bound to pay him the amount before he could recover them. Upon the filing of this answer, the plaintiff, " on suggesting to the court that the defendant claims but $382 26, as a lien upon the oats sequestered in this case, and upon it appearing that the defendant has not applied to bond the same." had an order to bond the oats, upon giving security in the sum of $500. In obedience to this order, the sheriff delivered the oats to the plaintiff, taking from him a bond for $500, conditioned that the plaintiff should not send the property out of the jurisdiction of the court, and that he would faithfully present the same in case he should be decreed to restore the same to the sheriff or defendant, and would satisfy such judgment as should be rendered in the suit.

A judgment ought, if possible, to put at rest the issues between the parties, and close the door to further litigation. Although the judgment might have been expressed in more formal terms, we consider it, viewed as a whole and with reference to the pleadings and proceedings in the cause, as substantially closing the contest between the parties; leaving the plaintiff in possession of the oats, but decreeing him to pay the defendant his freight, for which payment the bond stands as security. Upon making that payment the rights of the defendant will be satisfied, and the plaintiff exposed to no further responsibility or litigation. *Judgment affirmed.*