### No. 7864.

## MRS. M. B. WOODHOUSE AND HUSBAND VS. THE CRESCENT MUTUAL INSURANCE COMPANY ET AL.

A corporation is the custodian and trustee of the corporate funds, property, and stock, for the stockholders; is bound to employ competent and faithful transfer agents; and responsible to the stockholders for any negligence or fraud of such agents, to their injury.

In case of illegal and unauthorized transfer of stock to a third person, the injured stockholder may contest the title of the transferree, contradictorily with both the latter and the corporation; but he is not confined to this remedy. It has been frequently held that he may sue the corporation alone for the value of his stock illegally transferred.

Under Art. 2997, the mandate to sell must be "express and special," which has been often held to mean the converse of *implied* and *general*.

The attempt to *imply* authority to sell from other acts of agent of a different character, done without authority and yet approved by principal, is in the very teeth of the Code. Nor do such facts operate as an *estoppel*.

Under the facts of this case the corporation permitted the transfer of plaintiff's property illegally and without authority from her, and is liable for its value and for dividends unlawfully divested.

APPEAL from the Fifth District Court for the Parish of Orleans. *Rogers, J.*

---

### J. O. Nixon, Jr. for Plaintiff and Appellant:

1. The power to sell must be express and special. C. C. 2297.

2. There was no negligence on the part of plaintiff in leaving the certificate of stock with Allen. Bank of Ireland vs. Evans, 32 English Law and Equity Report, 28; Loring vs. Salsbury Mills, 125 Mass. 138.

3. There is no circumstance in the record that amounts to an implied authority to sell, even if such authority were valid.

4. To protect a person dealing with one who claims to act as agent of another, it must be shown that the alleged principal did some act known to the person so dealing, and upon which he has relied as showing an authority by the alleged principal. Story on Agency, § 133.

5. The defendant Company having had exhibited to it the written power to Allen, and that power not giving the power to sell, it was bound to inquire from Mrs. Woodhouse, as to the rights of Allen.

Woodhouse vs. Insurance Company.

6. Allen had no power to pledge the stock; and the pledgee as pledgee could have no claim upon the stock.

7. The Company having transferred the stock without authority from plaintiff and to her loss and injury, is liable for its value. 125 Mass. 138.

### *M. M. Cohen* and *Nicholls & Carroll* for Defendant and Appellee:

The damage was occasioned by the negligence or fault of Mrs. Woodhouse, or of her agent and not of the Company. And, "whenever one of two innocent parties must suffer, the law throws the loss upon him by whose negligence or fault the damage is occasioned." Carpenter vs. Allen, 16 An. 437; same point, 26 An. 742; 27 An. 46; 20 An. 327; 4 An. 19; 3 An. 400; 13 An. 524.

If Allen had not sold the stock to pay the note to the Union Bank, secured by pledge of the stock, the pledgee could have sold, or caused to be sold, the stock thus pledged. And if Mrs. Woodhouse has a claim, it is against her agent and cousin, and thirty-year acquaintance, who pledged the stock, and not against the Insurance Company, which could not prevent him from pledging it. "Plaintiff must pursue his unfaithful agent." Harris vs. Cuddy, Brown & Co., 21 An. 389.

"The stock cannot be transferred by relator, except upon the books of the respondent, and on the production of the certificates. This is sufficient protection to the Company." State ex rel. M. Phillips vs. N. O. Gas Light Company, 25 An. 413.

The stock in the case at bar was transferred "on the books of the Company, and on the pro duction of the certificate."

---

The opinion of the Court was delivered by

MANNING, J. The plaintiff alleges that she is the owner of thirty shares of stock of the defendant Company of one hundred dollars each, and that it has transferred them to one Mrs. Coleman without the plaintiff's consent or authority, and refuses to longer recognise her as the owner of the shares and to pay her the dividends thereon. The suit is for the recovery of the value of the stock, three thousand dollars, and a solidary judgment is prayed against the Company and Mrs. Coleman.

The Insurance Company pleads the general issue, and specially avers that the stock was bought by Carroll W. Allen in 1876, as agent of the plaintiff, who held it until 1879, and then sold it in the same capacity; that in this interval Allen as agent received the dividends and transmitted accounts to the plaintiff, of which those transactions formed a part; that Allen's agency was not confined to this matter, but he leased her property in New Orleans, collected her rents, invested those rents for her, etc., under a power of attorney, and that all these circumstances justified the Company in treating Allen as her agent with full power to sell the stock.

Mrs. Coleman answered that she purchased the stock, paid for it, now owns it, and knows nothing of the plaintiff or her agent, or of their affairs.

The issues were submitted to a jury, who found for the defendants, and there was judgment accordingly.

The plaintiff lives at Brownsville, Texas, and owns a house and lot in New Orleans. By notarial act dated Oct. 28, 1875, she made Allen her agent with full power and authority to borrow money, to draw and endorse notes for money so borrowed, and to mortgage her property to secure their payment. He bought the stock of the Insurance Company with money obtained from a mortgage upon her property, executed by him in 1876. The stock was entered upon the books of the Company in her name. He collected the dividends and accounted to her for them. His accounts, transmitted to her, contain entries of these and other business matters. He does not appear to have had any special authorization to buy stock, or to sell stock, or to make any other investment, nor even to collect her rents, nor to lease her house. But he did all these things, and she received and approved his accounts of them, and ratified them. There was never any intimation of disapproval. On the contrary, she evidently thought this was precisely what he was agent for. Certainly this was his chief business as her agent.

Allen made a note for $4,400, as her agent, and pledged the insurance stock as collateral to secure its payment. At the maturity of the note he sold the stock and with the proceeds paid it. This was done in June, 1879. A broker purchased the stock for Mrs. Coleman, and the transfer on the Company's books was made to her. Allen had held the stock certificates during the three years Mrs. Woodhouse owned them. She never saw them.

It is very clear that Mrs. Coleman owes the plaintiff nothing, nor do we think the Insurance Company is liable. The power of attorney authorized the agent to borrow, to execute notes, and to mortgage property. Allen therefore had authority to make the note, to secure which the stock was pledged. If Allen had not paid the note the pledgee could have caused the stock to be sold. Allen did that which could have been compelled by legal proceedings. He sold without the intervention of the law, and Mrs. Woodhouse's obligation was extinguished.

Outside of the power of attorney he was the manager of her affairs here. The stock was sold to him as her agent, and the Company's books contained the transfer to him in that capacity. To him the dividends of three years were paid, the stock certificates being in his possession all the while, and these certificates were produced by him when the sale was made, and were surrendered. If he was without authority to sell, and loss ensued to the plaintiff, the damage should not be repaired by the Company, who was induced by her own acts to treat her agent as she had treated him herself. When one of two innocent persons must suffer the law selects as victim that one who occa-

sioned the loss by his own fault or negligence. Frosten vs. Legendre, 3 Ann. 400; Walker vs. Cassaway, 4 Ann. 19; Florat vs. Marchand, 26 Ann. 741; Mahan vs. Dubuclet, 27 Ann. 45.

The plaintiff's counsel lays stress upon the fact that Allen exhibited his power of attorney when the stock was sold and was about to be transferred, and the Company had but to inspect the instrument to ascertain the absence of authority to sell the stock or any property. But it is manifest that under that power he had not authority to do any act he had done in the general management of her business—no authority but to borrow, sign notes, and mortgage—yet all his or her business with the Company had been done by him with her approval, and she had not only held him up to the Company as her agent, but he was in fact such, and her testimony exhibits her entire satisfaction with his management until after this sale.

Judgment affirmed.

### On Rehearing.

The opinion of the Court was delivered by

Fenner, J. Under stress of well established principles and authorities we feel constrained to reconsider our original opinion and decree herein.

The statement of facts presented in the original opinion is substantially correct, and we refer to the same.

The plaintiff sues the defendant for the value of thirty shares of stock owned by her, which she alleges the Company unlawfully transferred to a third person without her authority.

The Company affirms the transfer and defends the action on the ground that the transfer was lawful and authorized.

### I.

The objection made in argument to the remedy invoked by plaintiff is not well founded. She was not bound to sue to annul the transfer and demand the restoration of the stock. The corporation is the custodian and trustee of the corporate funds and property and stock for the stockholders. It is bound to employ competetent and faithful transfer agents, and is responsible to the stockholders for any negligence or fraud by such agents to their injury. When stock has, by the fraud or negligence of the corporation or its agents, been permitted to be unlawfully transferred to a third person, without authority of the owner, the latter may, indeed, contradictorily with both the corporation and the transferree, contest the title to the stock and demand its restoration. But he is not bound to take this course. He may sue the corporation alone for the value of his stock illegally transferred.

This last remedy has been frequently recoguized and affirmed. Factors' & Traders' Ins. Co. vs. Marine, 31 An. 149; Sewall vs. Boston, 4 Allen, (Mass.) 277; Pollock vs. National Bank, 3 Seld. (N. Y.) 274; Albert vs. Savings, 1 Md. Ch. 407; Loring vs. Salisbury, 125 Mass. 138; Gray vs. Portland, 3 Mass. 385.

## II.

Under Art. 2997 Rev. C. C., the mandate to sell must be "express and special." This Article has been frequently interpreted by this Court to mean "express and special," as distinguished from *implied* and *general.* Cuny vs. Roberts, 16 La. 180; Nalle vs. Higginbotham, 27 An. 477; Nugent vs. Hickey, 2 An. 358; Ducongé vs. Forgay, 15 An. 37; Robertson vs. Levy, 19 An. 327; Gribble vs. Haynes, 22 An. 141.

It is not pretended that Allen had any express and special authority from plaintiff to sell this stock, nor that she ever ratified his action in selling. On the contrary, as soon as she was notified thereof, she repudiated it.

The attempt to *imply* authority to sell, from the fact that Allen had done various other acts for plaintiff without special authority and yet approved by her, is in the very teeth of the requirement of the Code.

## III.

No principle of estoppel applies in this case. Unless by some act in connection with this very sale, she could not be estopped from her legal right to dispute his authority to make it, when his legal power to do so was entirely wanting, nor could her ratification of other unauthorized acts of a different character bind her to ratify this. Young vs. Grote, 4 Bing. 253; Bank of Ireland vs. Evans, 32 Eng. L. & E. 28.

But, aside from this, it does not appear that the Company was aware of, or misled by many of the various acts of Allen now set up in defense. Its own books show that it dealt with Allen, in the matter of this transfer, simply on the faith of a written procuration exhibited by him at the time, and which did not include the power to sell. The element of *misleader*, essential to estoppel, is entirely wanting.

## IV.

There was no fault or negligence whatever on the part of plaintiff in leaving the stock certificate in the possession of Allen. The certificate was in her individual name, not endorsed or assigned by her, and informed the Company and all persons that the stock belonged to her and could not be sold or disposed of without her authority.

In one case already quoted, where the certificate was in the name of a trustee for the benefit of a *cestui que trust* known to the corporation, a transfer by the trustee without the *cestui's* authority was held no bar

to the latter's action for the value of the stock. Loring vs. Salisbury, 125 Mass. 138.

## V.

It appears that in 1875, several years prior to these transactions, plaintiff had given Allen a special notarial procuration to borrow money and make notes for and to secure the same by mortgage on certain designated property. The special purpose of the act is sufficiently apparent on its face; yet it contains general expressions relative to the power to borrow and to make notes, and had never been revoked. Allen, long afterwards, borrowed money from the Union Bank, made a note therefor as agent for Mrs. Woodhouse, and pledged the stock for payment thereof.

So far as the pledge is concerned, he was utterly without authority to make it, and it was without any effect as against Mrs. Woodhouse or her stock.

As for the note, the evidence shows that Allen borrowed the money for his own purposes, at a time when he had money of plaintiff in his hands and when the loan was not required for any purpose of hers; though Allen claims that some undefined part of it was used for her benefit; but the evidence is vague and uncertain, and no such defense is made in the pleadings.

It is not shown that the defendant corporation had any knowledge of this note or pledge at the time of the transfer, but it is contended that, as Allen used the proceeds of the sale of the stock, in taking up this note, they enured to her benefit and, therefore, bar her action.

It is possible that these facts might have furnished an equitable basis for a demand in reconvention against the plaintiff, and even yet for a separate action; but they offer no justification for the illegal transfer of her stock and no defense to her action for its value.

The pledge being null for want of authority, the holder of the note had no lien or claim on plaintiff's stock. Whatever right he might have against her personally could not have been satisfied by the unauthorized and extra-judicial sale of her stock and appropriation of the proceeds, but must have been urged judicially and subject to all legal defenses. If the defendant Company be equitably or legally subrogated to such right, it must be enforced in the same manner.

We cannot adjudge plaintiff to be liable on such note, without demand to that effect and without opportunity of defense, which, as sufficiently indicated, may be serious. The sole question at issue here is the liability of the defendant for the illegal and unauthorized transfer of her stock; and, as we have shown, that question must be solved in favor of plaintiff.

We perceive no conflict of equities in the case. The plaintiff has

Woodhouse vs. Insurance Company.

suffered enough at the hands of this unfaithful agent. She has been guilty of no fault or negligence excusing, in any manner, the action of defendant; while the latter has been guilty of the grossest negligence, for the consequences of which it must justly respond.

As a matter of course, the demand against Miss Coleman is without foundation.

We shall take as the value of the stock at the date of the sale, which is the value claimed with interest, the price at which it was then sold, viz: 81⅓ dollars per share, aggregating $2445.

It is, therefore, ordered, that our former decree herein be annulled and set aside.

It is now ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed; and that there be judgment in favor of plaintiff and against the Crescent Mutual Insurance Company for the sum of two thousand four hundred and forty-five dollars, with legal interest from June 29th, 1879, and costs in both Courts; and that the demand against Miss Coleman be rejected.

## DISSENTING OPINION.

MANNING, J. Mrs. Woodhouse empowered Allen to borrow money in her name, to sign notes therefor, to execute a mortgage to secure them, and to do all other acts needful in the premises. He borrowed money in her name, signed a note therefor, executed a mortgage upon her real estate to secure it, and that note was unpaid at maturity.

In his general management of her business he had bought for her the stock of the defendant Company, and sold it. He used the proceeds of that sale for her benefit by paying with them a part of her mortgage note. She ratifies the purchase of the stock by claiming it as her own in this suit, and repudiates the sale of it, although the proceeds had been used in part in extinguishing *pro tanto* her debt. It is against equity and good conscience that she should be permitted to do so.

Allen held the certificate of insurance stock. She had never seen it. He sold it as he had bought it, without her knowledge, and as her business-man. The defendant derived no benefit from the one act, nor the other. It cannot be disputed that the mortgage note bound her and her property. The sale of the stock relieved that property, and released her *pro tanto*. Yet she retains that property, and now gets what the stock was worth.

It was hinted orally at bar that her agent had gone to the bad, but so far from suffering for his unfaithfulness she is benefitted, and the defendant is punished for a sin that is not of its commission.

I cannot sanction a judgment that effects that result.