FOWLER v. ALLEN.

1. The charge to the jury in this case was not a charge on the facts.
2. Where one signs a negotiable note, perfect on its face, as surety for another, upon the condition known only to the maker (who was thereby made the agent of the surety), that it is not to be delivered until something else is done, the surety will be liable, even if such condition be not complied with, unless notice of the condition is brought home to the payee. The original payee for value, without such notice, is entitled to recover against the surety.
3. This case distinguished from *Gourdin* v. *Read* (8 Rich., 230), and *Mills* v. *Williams* (16 S. C., 593), in that in those cases the instruments were not complete, but were in such form as to excite inquiry as to the agent's authority.

Before HUDSON, J., Spartanburg, March, 1889.

This was an action by Robert A. Robison and William Fowler, trading under the firm name of Fowler & Robison, against Harriet Allen, commenced June 26, 1888. The judge charged the jury as follows :

This action is brought by the plaintiffs against the defendant upon two promissory notes, one for $173.09, dated December 30, 1884, payable the first day of the following December; the other calling for $238.89, bearing the same date and payable the first day of the following December, the same date. Do not forget that, because it may become a question that you will ask yourselves : why two notes of the same date instead of one? The execution and delivery of the notes is testified to by the plaintiffs, who also testify that no part has been paid. That makes out plaintiffs' case, and there the plaintiffs closed. The defence is that these notes were delivered upon a condition, and that condition has not been fulfilled ; therefore that the defendant, Mrs. Harriet Allen, is not liable.

They are promissory notes, negotiable paper. When persons put their names to negotiable paper, if they expect to get rid of the obligation by the proof of conditions, collateral undertakings, &c., why the evidence introduced on that subject must be satisfactory. I charge you, gentlemen, that it is of the first impor-

tance that you determine what the contract was betwixt the principal on these notes, Eber C. Allen, I believe it is, and the payees, Fowler & Robison. That is all-important. What was the understanding between them? What were the notes given for? Mr. Allen, the principal on the note, and the payees of this note, that is, the debtor and creditor, are pretty well agreed on that subject. I don't know that there is any difference. Eber C. Allen owed these men debts, and for two of those claims they were suing him in the trial justice court. The other one was a store account, a large one. Whereupon negotiations took place betwixt them and the plaintiffs, so that they agreed with Mr. Allen, that if he would get his mother to sign the notes with him to cover the judgments—these trial justice judgments—they would indulge him, if he would also get her to secure that store account. Whereupon Mr. Allen went off; the notes were drawn by the attorney for Fowler & Robison, Mr. McCravy—two notes, one covering the store account, another one covering the trial justice judgment, prepared; carried them to his mother, came back with his mother's signature, delivered the notes to these parties, and according to the testimony of Mr. McCravy and Fowler & Robison, nothing was ever said about cancelling any trial justice judgment until then, when Mr. Allen proposed that they be cancelled. They said, "No; we were to indulge you until this note covering them is paid." "Well, I must have some showing for that." According to Mr. McCravy's statement, he dictated it, and that is written on the back. Now, you see what is written on the back of one note—it is not on the back of both—written down at the request of Mr. Allen, dictated by Mr. McCravy, written down by one of those gentlemen: "This note is given for two judgments in the sheriff's office, said judgments to be marked paid when the within note is paid."

Mr. Allen says the judgments were to be cancelled. Ask yourselves the question, Which would be the most sensible course? Which is the most in accordance with business men? If you had a judgment against a man, and he desired indulgence, a note secured was brought, which now would be in accordance with the way in which men deal with each other, and the estimate which they put upon judgments, &c.? I say you have got to ask your-

selves that question and answer it.   And if it was a contemporaneous paper, if that endorsement was done at the instance of Mr. Allen, dictated by Mr. McCravy, and put down there by one of those parties, is that more likely to be in accordance with the agreement, or the memory of a witness who comes now at this remote period to testify?   You have got to ask yourselves that question.   It is a question I cannot answer.   I cannot give you any opinion about that.   But that is the way you have got to examine the testimony, to determine which version of this matter is correct, or who is correct or who is mistaken.

Then you will observe there is no endorsement on the $238.89 note, that covers that store account, according to the testimony. You are to say whether you believe any of the testimony or not, and how much, &c.   I am only reciting it.   There is no endorsement on that store account at all.   There seems to be only one here, this note that covers the judgment.   Put it down, if that be so.

Now, you must consider the time that has elapsed. You must consider the fact that these notes were to run a year; this credit, almost—given on the 30th of December, and they were to run till the first of the next December—a year's indulgence. Now, according to the testimony of the plaintiffs, that indulgence was to be given on these judgments.   "We will not sell you out, we will not enforce these judgments for this length of time; give us a secured note and we will indulge."   Mr. Allen says they were to be cancelled then and there.   You have got to determine now which of this testimony has the most weight.   It is not necessary that you should find that anybody has told a falsehood, not at all.   The most honest people are often mistaken.   Who is mistaken in this matter, and who is correct?   That is all there is about it.

If you come to the conclusion that the contract was that they were to indulge on those judgments, if this note was given covering the judgments at one year's time, and that when this note was paid the judgment should be marked paid—if that was the contract, and Mr. Eber C. Allen took these notes to his mother all drawn up and signed by himself; if he took them to his mother to get her signature—it does not matter what representation he made to her, not a bit.   Because they are negotiable

promissory notes, and he might have told her what he pleased
about those judgments, and she might have signed them under
representations made by him.   It would not make any difference,
it would not exculpate her unless that was the agreement between
Fowler & Robison and Mr. Eber C. Allen.   That is what people
have always got to take into consideration when they sign nego-
tiable paper.   It is a paper that is highly favored in commerce.
Commerce could not go on without it.   You could not conduct
the business affairs of life if negotiable paper were liable to be
impugned and defeated by pleas of that kind.   If parties who
sign joint and several notes said, "I signed upon the condition
that such and such a thing should be done," why they cannot
get off from their signature unless they prove that that was the
arrangement with the payee.

This lady did not see the payee, did not see Fowler & Robison;
she only saw her son,  Now, it does not matter what her son told
her.   You have got to find out what the arrangement between
Fowler & Robison and Mr. Allen was, and if the version given
by Mr. McCravy and Mr. Fowler and Mr. Robison is correct,
this lady is barred, judgment will have to against her.   That is
all about it.   And she would only be excused if she were to sign
under a condition which was known to these payees.   Here are
judgments open.   Indulgence has been given not only for one
year, but the indulgence has been given now from December,
1884, until the present time, four years and more; and they say
that they gave the indulgence for a year upon getting these papers
to secure them.

So you must find your verdict for the plaintiffs for the full
amount of both notes, if you come to the conclusion that the plain-
tiffs and the plaintiffs' witnesses have given the correct version of
the consideration upon which these notes are given.   If you come
to the conclusion from the testimony, not that the old lady sim-
ply understood, but that the understanding was with Fowler &
Robison ; that they knew it, that it was to be delivered upon that
condition, then and only then will she be released if the condition
has not been fulfilled, and that has been conceded—the judgments
have not been marked satisfied.   So you will take the record.

The jury found a verdict for plaintiffs, and defendant appealed, alleging errors to the charge in the following particulars:

I. That "when persons put their names to negotiable paper, if they expect to get rid of the obligation by the proof of creditors' collateral undertakings, &c., the evidence introduced on that subject must be satisfactory."

II. In charging upon facts.

III. That "it did not matter what representations Eber C. Allen made to his mother."

IV. That "if the jury came to the conclusion that the contract was that the plaintiffs were to indulge Eber C. Allen on those judgments if this note was given covering the judgments at one year's time, and that when this note was paid the judgments should be marked paid—if that was the contract, and Eber C. Allen took these notes to his mother, all drawn up and signed by himself, to get her signature, it does not matter what representations he made to her, not a bit, because they are negotiable promissory notes, and he might have told her what he pleased about those judgments, and she might have signed them under representations made by him; it would not make any difference or exculpate her, unless that was the agreement between Fowler & Robison and Eber C. Allen."

V. That no plea of condition would avail by defendant unless she proved "that that was the arrangement with the payee."

VI. That "it did not matter what Eber C. Allen told defendant, but the jury must find out what the arrangement was between Fowler & Robison and Eber C. Allen, and if the version given by Mr. McCravy and Fowler & Robison is correct, the defendant is barred and judgment would have to go against her."

VII. That defendant could only be excused if she were to sign under a condition which was known to plaintiffs.

VIII. That the verdict must be for plaintiffs for the full amount of both notes, if the jury come to the conclusion that the plaintiffs and their witnesses have given the correct version of the consideration upon which these notes were given.

IX. If the jury come to the conclusion from the testimony, not that defendant simply understood, but that the understanding was with Fowler & Robison, that they knew it, that it was to

be delivered upon that condition, then and only then would she be released if the condition has not been fulfilled.

*Messrs. Nicholls & Moore*, for appellant.

His honor told the jury that Eber C. Allen and the plaintiffs pretty well agreed on what was the understanding between them. As a matter of fact, they do not agree; swear exactly the converse. Mr. E. C. Allen swears not merely that his mother signed these notes on certain conditions which were to be fulfilled before delivery, but that plaintiffs understood it, and that such was the agreement on which he signed them also. The judge clearly intimated to the jury that they are to believe Mr. McCravy's and plaintiffs' testimony rather than Eber C. Allen, by adopting their statement himself, and repeating it in such a way as to give it his sanction. The judge goes out of the testimony to sustain plaintiffs' evidence, and makes an argument to the jury that it must be so, because it is in accordance with sound business practice, assuming as proven that plaintiffs were sound business men, and did things in accordance with his honor's idea of business principles.

On the questions of law involved, counsel *cited* 16 *S. C.*, 593; 8 *Rich.*, 230; 4 *Cranch*, 219; 1 *Hill*, 267; 2 Nott & McC., 125; 98 *Ind.*, 259; 2 Am. & Eng. Encycl. L., 343; 6 Ibid., 868, 838.

*Messrs. Carlisle & Hydrick*, contra.

March 6, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER. The action in this case was upon two negotiable notes, dated 30th of December, 1884, and payable 1st of December, 1885, signed by one Eber C. Allen, as principal, and defendant, as surety, and made payable to the plaintiffs. It seems that the plaintiffs had recovered two judgments before a trial justice against said Eber C. Allen, and also held an open account against him. One of the notes in suit was given for the amount of the two judgments, and contained an endorsement thereon to that effect, that when the note was paid, the judgments were to be cancelled. The other note was for the amount

of the store account. The defence was, that defendant signed the notes as surety upon the condition that they were not to be delivered to the payees until the two judgments were marked satisfied. Testimony was introduced, tending to show that the plaintiffs being about to press the two judgments, it was agreed that if Eber C. Allen would secure the amount thereof, as well as the amount of the account, by his own note, with his mother, the defendant, as his surety, indulgence would be extended to him for the time specified in the notes. Accordingly Eber C. Allen signed the two notes and took them off to procure his mother's signature, and a few days thereafter delivered them to the plaintiffs properly signed by her. There was also evidence tending to show that defendant signed the notes upon the condition that they were not to be delivered to the plaintiffs until the two judgments above mentioned were cancelled. Whether this condition was communicated to the plaintiffs when the notes were delivered was the subject of some conflict of testimony—Eber C. Allen testifying that it was, while the plaintiffs and their attorney, Mr. McCravy, who conducted the negotiations on behalf of the plaintiffs, testified to the contrary.

The jury having found a verdict for the plaintiffs, and judgment having been entered thereon, defendant appealed upon the several grounds set out in the record, which, however, make substantially but two questions, viz. : 1st. Whether the Circuit Judge erred in charging upon the facts. 2nd. Whether there was error in instructing the jury that even if the defendant did sign the notes upon the condition stated, which it is conceded was not complied with, she would nevertheless be liable thereon, unless the plaintiffs had notice that she signed upon such conditions.

As to the first question, we deem it only necessary to say that a careful examination of the judge's charge, which is set out in the "Case," fails to disclose any violation of the constitution in charging upon the facts. On the contrary, it seems to us that every material question of fact was fairly left to the jury without any expression or even intimation of opinion on the part of the Circuit Judge.

As to the second question, while it is not to be denied that there is some conflict in the cases elsewhere, we think the decided

weight of authority, as well as argument, is in favor of the proposition that where one signs a negotiable note, perfect on its face, as surety for another, upon the condition known only to the principal, that it is not to be delivered to the payee until something else is done, the surety will be liable, even if such condition be not complied with, unless notice is brought home to the payee of such condition. This proposition does not rest alone upon the peculiar character of negotiable paper, but upon the well settled principle, that where one of two innocent persons must suffer, the loss should fall upon upon him who put it in the power of a third person to cause such loss; as well as upon the principle that where an agent is clothed with apparent authority to do an act, he may bind his principal within the limits of that authority, whatever may have been his private instructions.

Here the principal debtor, after signing the notes, takes them to the defendant for the purpose of procuring her signature as his surety, in accordance with the agreement made by him with the plaintiffs, and when he delivers them properly signed, surely the payees cannot be affected by any private instructions which the surety may have given to her principal, unless the same were communicated to the payees. The surety, by signing the notes, complete in form, and placing them in the hands of her principal to be delivered to the payees even though upon a condition, has placed it in the power of her principal to deceive the payees, and if loss ensued, it must fall upon the one who contributed to that loss, rather than upon the innocent payees, who were left in ignorance of the conditions upon which the notes were signed. The principal debtor was the agent of the surety and not of the creditor, and if he has done an act for the doing of which he was clothed with apparent authority, even though it may have been done in violation of his private instructions, the person who invested him with such apparent authority must take the consequences. Any other view would, it seems to us, greatly impair, if it did not absolutely destroy, that confidence so necessary to the business interests of the community in negotiable paper; for it would render it necessary, before a negotiable note could be discounted by a bank or by a private individual, that inquiry should be made of the endorser or surety as

to whether they had signed their names upon conditions; and this surely could not be tolerated. That these views are well supported by authority, may be seen by reference to the case of *Jordan* v. *Jordan* (10 Lea, 124; s. c. 43 Am. Rep. 294), where the subject is fully discussed and the authorities cited, also *Marks* v. *National Bank* (79 Ala., 550; s. c. 58 Am. Rep., 620), as well as the cases cited in 6 Am. & Eng. Encycl. L., 860, note 2.

It is urged, however, that the notes in this case, though negotiable in form, being still in the hands of the original payees, are not entitled to the protection which paper of that class would receive in the hands of a *bona fide* holder for value, to whom they had been transferred before maturity. But we do not think that this can affect the question. Of course, if these notes had been transferred before maturity to an innocent holder for value, no such question could arise, and therefore the question in the cases we have cited arose in cases where the original payees were still the holders. The plaintiffs here agreed to extend indulgence for a stipulated time if the debts were secured by the notes in question, and that was a valuable consideration outside of the original debt, and the indulgence was extended for the time stipulated—in fact, for a much longer time—upon the faith of defendant's suretyship; and now to deprive them of the consideration upon which such indulgence was extended, on the ground that the principal debtor has violated his private instructions from his surety, of which the plaintiffs had no notice, would, it seems to us, operate as a fraud upon the plaintiffs.

Some of the cases, notably *Dair* v. *United States* (16 Wall., 1), followed by *Butler* v. *United States* (21 *Id.*, 272), have extended the principle above laid down to unnegotiable as well as negotiable instruments. While there is much force in the reasoning employed in those cases, we do not deem it necessary at this time to consider that question. The cases of *Gourdin* v. *Read* (8 Rich., 230), and *Mills* v. *Williams* (16 S. C., 593), relied on by appellant, we do not think in point, not simply because in those cases the instruments involved were unnegotiable, but because in neither case were they complete in form. Indeed, in the latter case the instrument on its face showed that the

instrument was intended to be delivered to a person other than the plaintiff, 'and for a purpose different from that for which it was used; and in the former case the bond being in blank, it was incumbent on the plaintiff to inquire into the authority of the surety to fill the blanks. The practical result of these two cases is simply this—that where the instrument in question is in such form as would naturally excite inquiry, then the person who takes it must be deemed to have notice of such facts as such inquiry, properly prosecuted, would disc'ose. In this case, however, it does. not appear that there was anything in the form of the notes calculated to excite inquiry, and therefore we think there was no error on the part of the Circuit Judge in instructing the jury that unless they found that the plaintiffs had notice of the private instructions which the defendant may have given to her agent, the principal debtor, as to the condition upon which the notes were to be delivered, the plaintiffs could not be affected thereby.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.