PROVO STY, J.
This suit is brought upon the following instrument:
“H. & C. Newman, Limited, New Orleans, La.
“Gentlemen: My son W, C. Scarborough who is doing business with you informs me that owing to the failure of the R. Rd. Co. to furnish cars to move cotton, he has not been able to make you shipments lately and in consequence his indebtedness to you at present is larger than he or you expected it to be. I therefore desire to reassure you that by granting my son further indulgence, say until February 15th next, he will by that time pay you in full and I guarantee you that this shall be done, else you can look to me to satisfy you in full any balance he may be due you.
“D. M. Scarborough.”
The defenses are that this letter was signed in error, the defendant thinking that the amount was $1,100, instead of $11,000, and that the guaranty evidenced by tne letter was never accepted by the plaintiffs until after it had been withdrawn.
The facts are that plaintiffs, who were commission merchants in the city of New Orleans, had made advances to W. O. Scarborough, the son of defendant, in Red River parish, to an amount exceeding $14,000, against certain shipments of cotton that were to be made, and that, finding that the shipments were slow, plaintiffs sent D. M. Marsh, their treasurer, to inquire into the business affairs of their debtor. Mr. Marsh called upon Mr. Scarborough on Christmas day, and insisted upon having a guaranty for the payment of the debt; otherwise, he would take judicial proceedings. Scarborough undertook to procure the guaranty of his mother, and thereupon the above letter was written; it being dated the 24th, so as to avoid giving it the date of a legal holiday. It was drafted by Marsh and left with Scarborough for him to procure the signature of his mother. It was to be handed to Marsh on the second day thereafter, when he would call for it. Marsh called for it accordingly on the 27th of December, but it had not yet been signed. I-Ie insisted upon having the guaranty, and thereupon Scarborough summoned a messenger, and sent the letter to his mother, who lived about a mile off, together with a note reading: “Mama: Please sign this.” Marsh was anxious to leave by a train that was nearly due, and accordingly, as the messenger was leaving, he asked him to make haste. The messenger returned with the letter as the train was leaving. I-Ie handed it' to Marsh in the presence of Scarborough. Marsh asked Scarborough if it was the signature of his mother, and Scarborough answered that it was. Marsh left on the train, taking the letter with him. On the 31st of December plaintiffs wrote to defendant the following letter:
“Mrs. D. M. Scarborough, Williams, La.
“Dear Madam: We beg to acknowledge receipt of your communication of the 24th inst., requesting us to grant your son indulgence until Feby. 15th, and agreeing therein to guarantee us against any loss in his account, should he owe us any balance at that time. We trust that your son will soon have a quantity of cotton in our hands, so that the account may be liquidated and that you will not be obliged to assume any of his indebtedness.
“With ‘Compliments of the Season,’ we beg to remain,
“Yours respectfully,
“H. & O. Newman, Ltd., per E.”
Scarborough making no further shipments, the traveling man of plaintiffs called on the defendant, Mrs. D. M. Scarborough, and it would seem she then for the first time learn *445 ed how large the debt was. The information caused her considerable emotion. But she did not then say that she had signed the letter in error. Ten days afterwards, she having in the meantime consulted counsel, she wrote to plaintiffs the following letter, which embodies the defense made by her in the present suit.
“Mess. H. & O. Newman, New Orleans, La.
“Gentlemen: Your favor of 19th inst. received and noted regarding the debt you hold against my son.
“The letter of guarantee which your agent sent me to sign did not state the amount of the debt and I refused to sign it until the messenger told me that it was only eleven hundred dollars ; now it turns out that it is several thousand dollars, and I do not consider that I am bound for the debt or even for the eleven hundred dollars since the letter was signed in error, which is often close akin to fraud.
“I would thank you to send me a copy of the document.
“Very respectfully,
“(Mrs.) D. M. Scarborough.”
On the witness stand she repeats the statement of this letter touching the representation made to her by the messenger as to the amount of the debt, and the messenger also testifies to his having made the statement. He, however, is so discredited on cross-examination that his testimony can hardly be looked upon as amounting to corroboration.
No suspicion of fraud or practice can attach to plaintiffs. The letter was left with Scarborough for him to get the signature of his mother to it. There was the fullest opportunity for him to inform his mother of what the amount of plaintiffs’ debt was. The nonmention of any amount in the letter is fully explained by the fact that plaintiffs had 130 bales of cotton on hand yet unsold, the proceeds of which would have to go in reduction of the debt, so that the guaranty was in reality to be of an eventual debt.
The district judge gave judgment for defendant. His reasons for judgment are not in the record.
The second defense, that of the nonac- ■ ceptance of the guaranty, can hardly be serious. The plaintiffs demanded this guaranty as a condition of withholding immediate legal proceedings. They got it, kept it, said nothing about not accepting it, withheld the threatened legal proceedings, and wrote to defendant expressing the hope that she would not have to answer for the debt. This conduct clearly amounted to an acceptance. The argument that this letter should have contained an explicit and categorical acceptance of the guaranty strikes us as being without any force whatever. Of what use to say. expressly in the letter that the guaranty was accepted, when it had been accepted already. It had been demanded, taken, kept, and acted upon.
The other defense, and which doubtless was the one sustained by the learned judge a quo, is more serious. Defendant positively testifies that she signed the document on the representation that the debt was of $1,100, and that she would not have signed otherwise; and we find no reason for disbelieving her statement. While, on the one hand, it is strange that she should not have pleaded this error at the interview with plaintiffs’ agent when she was informed of the amount of the debt, on the other hand, her unmistakable surprise when so informed convinces the most impartial mind of the sincerity of her statement. So great was her emotion that strength forsook her, and she had to be assisted out of the room. That she said nothing to plaintiffs about this error until some time thereafter, and until after she had consulted with counsel, is accounted for by the fact that she in that time had no occasion to communicate with plaintiffs.
A consent given in error is no consent, and without consent there is no contract; hence, in so far as defendant consented to this guaranty in error, it is not her contract and is not binding on her as such. But up to $1,100 she consented to be bound, and as a consequence. *446 up to that amount the guaranty is binding upon her.
The argument of the learned counsel for defendant that error as to part of an agreement vitiates the whole may do well enough when the obligation is indivisible, and must either exist for the whole or not at all; but it can have no force in a case like the present one, where the obligation is divisible. If I agree to sign a note for $1,000, and I sign it for $2,000, I am certainly bound as to the $1,000.
In a case closely analogous to this one, but not so strong in its facts, the Court of Cassation held the surety liable for the part of the debt as to which there was no error while granting- relief as to the excess.
A person had agreed to become surety for a debt already secured by mortgage. Before signing as surety the person had had the titles to the mortgaged property examined, and had finally consented to sign only after the titles had been pronounced satisfactory. It turned out that part of the mortgaged property did not belong to the mortgage debtor and was not subject to the mortgage. To the extent of the value of the property as to the title to which there had been error the court relieved the surety, but held him bound for the remainder of the debt, as to which there had been no error. Gran c. Rogier, J. du P. 1895, vol. 1, p. 72.
In behalf of plaintiffs it is contended that the error, if error there was, was not induced by plaintiffs, and therefore cannot prejudice their rights under the contract. In support of that contention counsel cites the cases of Calhoun v. McKnight, 44 La. Ann. 575, 10 South. 783; Miles v. Ogden, 8 Mart. (N. S.) 215, 19 Am. Dec. 177; Thomas v. Mead, 8 Mart. (N. S.) 343, 19 Am. Dec. 187; Jones v. Purvis; 9 La. 290; Ferrari’s Adm’x v. Lamdbeth, 11 La. 108; Blanchard v. Castille, 19 La. 364; Richardson v. Hyams, 1 La. Ann. 286; Sexton v. McGill, 2 La. Ann. 190; Boudreau v. Bergeron, 4 La. Ann. 83; Thompson v. Whitbeck, 47 La. Ann. 49, 16 South. 570; Reusch v. Keenan & Slawson, 42 La. Ann. 419, 7 South. 589; Watson v. Planters’ Bank of Tennessee, 22 La. Ann. 14.; Allen, West & Bush v. Whetstone, 35 La. Ann. 846; Keough v. Foreman, 33 La. Ann. 1439; Prescott v. Cooper, 37 La. Ann. 553.
The cases do not sustain the contention. It stands to reason that error is error, no matter by whom or by what induced, and that a consent given in error is no consent, and cannot give birth to a contract.
But a person cannot in justice visit upon another the consequences of his or her own error, and hence Mrs. Scarborough is anT swerable to plaintiffs to the extent that -her error has caused them a loss. To that extent, and in that connection, the eases cited above by plaintiff’s learned counsel are in point, as also are the following additional cases cited by him: Frosten v. Legendre, 3 La. Ann. 400; Walker v. Cassaway, 4 La. Ann. 19, 50 Am. Dec. 551; Florat v. March- and & Mitchel, 26 La. Ann. 741; Mahan v. Dubuclet, 27 La. Ann. 45; Woodhouse v. Ins. Co., 35 La. Ann. 241; Carpenter v. Allen, 16 La. Ann. 437; Lieuteaud v. Jeanneaud & Cathalogne, 20 La. Ann. 327; Bell v. Keefe, 13 La.Ann. 524; Davis v. Police Jury, 1 La. Ann. 288; Bank v. Neal, 22 How. 96, 16 L. Ed. 323; Fowler v. Allen (S. C.) 10 S. E. 947, 7 L. R. A. 745; Allen v. South Boston R. Co. (Mass.) 22 N. E. 917, 5 L. R. A. 716, 15 Am. St. Rep. 185; Dair v. United States, 16 Wall. 1, 2 L. Ed. 491.
As the court said in the ease of Forsten v. Legendre, supra:
“Even if she made an unintentional mistake, her innocence cannot protect her; for the rule is that, where one of two innocent persons must suffer, he must suffer who by his own act occasioned the confidence and loss.”
The learned counsel for Mrs. Scarborough seek to relieve her altogether from the consequences of the error by contending that the error was superinduced by plaintiffs, be *447 cause the messenger upon whose information she acted was the agent of plaintiffs. The contention is in direct conflict with the evidence. The messenger was a man in t the employ of Scarborough, and was sent by Scarborough, and the only message he bore was the letter of Scarborough: “Mama: Please sign this.”
Plaintiffs are entitled to be placed in as good a position as they would have been in if the defendant had not given the guaranty and thereby induced them to extend indulgence to Scarborough; that is to say, they are entitled to recover judgment for whatever amount they can show they might have recovered from Scarborough had they not foregone judicial proceedings against him at the time the guaranty was given. What that amount is, is not shown in the present case, which was based simply on the contract. Up to $1,100 the debt is on-the contract, and plaintiffs are entitled to judgment for it. Beyond that the debt has not been proved, and as to this excess plaintiffs must be nonsuited, with full reserve of right to bring another suit.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that plaintiffs have judgment against Mrs. D. M. Scarborough for the sum of $1,100, with interest from judicial demand, and that plaintiff’s demand be otherwise rejected as in case of nonsuit, with full reserve of all rights. All costs of present suit to be paid by defendant.