## JOHN WETHERBEE, JR. *vs.* JOSEPH S. POTTER.

Whether or not the judge presiding at a trial will rule, at the defendant's request, upon the sufficiency of the plaintiff's evidence to maintain the action, before testimony is closed upon both sides, is a matter for his discretion; and no exception lies to his refusal to do so.

A., B., C. and D. agreed to buy real estate jointly; C. and D. agreed to furnish the money for the purchase; and C. agreed with D. that the drafts for the purchase money should be drawn on D., and that he would reimburse to D. one half of what D. should pay thereon. All these agreements were oral. *Held,* that the promise of C. to reimburse D. was not within the statute of frauds, as a contract for the sale of lands; and that, on a count for money paid to the use of the defendant at his request, D. could recover what-ever sum was lacking from C. towards such reimbursement, notwithstanding their part-nership in the purchase.

CONTRACT, alleging that the plaintiff and the defendant agreed to join in buying a colliery in Pennsylvania, each contracting to furnish one half of the purchase money, which was $50,000; that the plaintiff paid his full share of the price, but the defendant neglected and refused to pay more than $5000, and that towards supplying the deficiency the plaintiff was compelled to pay $15,000 on the defendant's account; with a count for $18,000 as money paid to the use of the defendant at his request. The answer contained a general denial of the defendant's liability; alleged that the contract sought to be enforced was within the statute of frauds; that the plaintiff had not performed his own part of the agreement; and that whatever agreement existed was in the nature of a partnership jointly with others who were not parties to the action.

At the trial in the superior court, before *Ames*, C. J., the plaintiff testified "that in January 1865 the defendant, in company with George O. Brastow and Joseph Hayden, called at his office in Boston, and proposed to him to join them in the purchase of a lease for a term of years of land in Pennsylvania, with a right to mine coal thereon, of which Brastow then held a bond or agreement giving him the right of purchase at $50,000; that, after some conversation, it was agreed between them that Brastow and Hayden should go to Pennsylvania to examine the mine, and, if they found it to be a desirable purchase, to buy it, with the understanding that Hayden was to procure subscribers for stock in the enterprise, and the plaintiff and the defendant were to advance such money as should be required to make the purchase, the intent being to put the property, when purchased, into a joint stock or corporate organization; that it was also agreed that, as the plaintiff had an office in Boston and the defendant had not, the drafts for the money should be on the plaintiff, and the defendant should pay to him one half of whatever he should pay on such drafts; that Brastow and Hayden, immediately after this conversation, visited the mine, reported favorably upon the property, and concluded the purchase, taking a contract in writing to transfer th 'ease and the fixtures upon the payment of $40,000, in addition

to $10,000 for which they at the time of taking the contract drew upon the plaintiff; that this draft of $10,000, in due course of business, was presented to and paid by the plaintiff, and the defendant promptly repaid to him one half of the amount; that in January and March four other drafts, of $10,000 each, were in like manner drawn upon the plaintiff, and forwarded for acceptance and payment, and duly accepted by the plaintiff; that of these four drafts the whole amount of the first one and $4000 towards the second were paid with funds furnished by Hayden, but the remainder, amounting to $26,000, was paid by the plaintiff; that the defendant wholly refused to furnish or pay any part of that last mentioned sum; and that all parts of the above agreements were oral, and not in writing."

He further testified " that, after the first two drafts had been paid, he and others organized themselves as a corporation, with a capital fixed at $150,000, in five thousand shares of $30 each, for the purpose of mining coal in Pennsylvania, with their place of business in Boston; that of this corporation he was president, subscribing for and taking two thousand four hundred and eighty-eight shares of the stock for himself and others, taking a certificate in his own name alone; that the entire amount of the stock was subscribed for and taken up, and certificates issued; that he received said shares for the money which he had paid out upon said drafts, and for nothing else;" "that the corporation so formed worked the mine for nearly a year, he advancing $4000 of his own funds towards the working expenses; that it proved a losing concern, and the work wholly stopped in about one year; that he still had all the two thousand four hundred and eighty-eight shares, never having sold or offered for sale any part of them; that before he had paid, but after he had accepted, all the drafts, he demanded payment of the defendant, and the defendant refused to pay, on the ground that the mode of doing the business was improper, as the failure to make any payment would produce the forfeiture of all that they had paid, and he (the defendant) had rather lose his $5000 than go any further; that he did not know that he ever told the defendant that the stock in his hands was on their joint account, or proposed to convey one half of the two thou-

sand four hundred and eighty-eight shares to him; but that, as to those shares, he had always been ready, and was then ready and prepared to transfer one half of the number to the defendant on payment of his share of the drafts; and that the defendant took no part in the organization of the corporation, never attended any of its meetings, took none of the stock, was not notified of its proceedings, and was not requested to join in it.".

The plaintiff here rested his case, and the defendant contended " that this evidence, if true, was insufficient to entitle the plaintiff to a verdict, on the ground that the contract, if proved, was void by the statute of frauds, not being in writing, and being for the sale of an interest in lands; also, because the plaintiff, by his own showing, had disposed of the property in question for a large amount of stock in a corporation, without offering any of the stock, or of the property purchased, to the defendant, or keeping it for him; and also because the contract alleged, being in the nature of a partnership, could not be enforced in an action at law."   But the judge did not so rule, and declined to withdraw the case from the jury.

The defendant then called Hayden, who was the clerk and treasurer of the corporation, as a witness, with its records, which showed that the plaintiff signed an agreement, for himself "and others," to take two thousand four hundred and eighty-eight shares, to be paid for in ten days; that the articles of association limited the amount of capital, and number and par value of the shares, as described in the plaintiff's testimony; that by vote at the first meeting the directors were authorized to purchase any mining property in Pennsylvania, and proceed to work the mine; that it was voted that the stock should be paid for in ten days from the meeting; and that all the shares were " taken up and paid for," those issued to the plaintiff being paid for in the manner in which the plaintiff had testified.   Hayden also testified that the company failed after working the mine for about a year, and that he was informed that all its property in Pennsylvania had been attached for debts, and gave the plaintiff notice accordingly, and afterwards told the plaintiff that it was all sold by the sheriff on execution; that he was not aware of

any conveyance from the company to any purchaser of its prop·
erty; and that the company had wholly ceased to do any busi-
ness. No documentary evidence of any kind was offered to
show in what way, if in any, the property had passed or been
taken away from the corporation. Hayden testified also "that
he gave the lease to the plaintiff, but, on cross-examination, that
he thought it was a lease, but did not remember what it was;
that the understanding was, that the property was to be put into
a corporation, the defendant to have one fourth part of whatever
might be realized; and that nothing was ever realized by the
company from the working of the property."

The defendant was examined as a witness in his own behalf
and contradicted many statements in the testimony of the plain
tiff, and insisted that by mutual agreement he was released from
any further payment after the first draft and gave up all his in-
terest in the property to the plaintiff. In cross-examination, he
testified "that the agreement at the plaintiff's office before the
purchase was, that the property, when bought, was to be put
into a joint stock corporation, and that he was to be paid for his
block or share in the enterprise by having one fourth part of
what should be obtained from disposing of the shares, and that
he did not intend and was not expected himself to be a stock-
nolder or a member of the corporation, or to have anything to
do with its organization."

There was no evidence that the plaintiff ever obtained any-
thing from the property other than the shares allotted to him;
or that the shares were of any value. The plaintiff was re-
called, and denied that he had ever seen or had in his possession
any lease of the property, or knew what had become of it; and
denied that he ever agreed to release the defendant from his
engagement to share in the enterprise.

The defendant requested the judge to rule that, in order to
maintain the action, it was necessary for the plaintiff to show
that he was holding one half of the property ready for the de-
fendant; that if it was proved that he had disposed of the whole
property to another person, or to a corporation, and received any
consideration for such disposal of it, he could not maintain the

action; and that the evidence would warrant the jury in finding that he had so disposed of it. The judge did not so rule, but instructed the jury " that if the plaintiff proved, to their reasonable satisfaction, that he and the defendant agreed to join in the purchase and to pay for the property in question, and that for the convenience of the parties the payment was to be upon drafts upon the plaintiff, of which drafts the defendant was to pay one half; and if the property was bought under this agreement, and the drafts were presented to and accepted by the plaintiff before any notice from the defendant that he refused to pay his half of them, or go on any farther in the enterprise of buying the property with the plaintiff; and if the plaintiff proceeded to pay them according to his acceptance; he was entitled to maintain his action. If, however, he had converted the property so purchased to his own exclusive use, or deprived the defendant of the benefit of it; that would be an effectual defence against the plaintiff's claim. But if, on the other hand, it was a part of the original agreement, that the property, when purchased, should be transferred to, or put into a joint stock corporation, to be managed and worked; and if, in pursuance of such agreement, it was so transferred; and if the plaintiff had received the two thousand four hundred and eighty-eight shares in the stock of said corporation, in good faith, in exchange for such property, and had at all times been able and ready, and was then willing and offering to transfer one half of said stock to the defendant, it would not be such a conversion of the property to the plaintiff's own exclusive use, as would be a bar to the action, even though the defendant had not participated in or been notified of the organization of said company."

The jury found for the plaintiff, and assessed damages in the sum of $14,654.89; and the defendant alleged exceptions.

*J. G. Abbott*, ( *W. E. Parmenter* with him,) for the defendant.

*A. A. Ranney*, for the plaintiff.

WELLS, J. The court was not bound to rule upon the sufficiency of the plaintiff's evidence to maintain the action, before the whole testimony was closed upon both sides. It is entirely a matter of discretion whether to do so or not, and is not open

to exception. This has been too often decided to admit of any question. *Bassett* v. *Porter*, 4 Cush. 487. *McGregory* v. *Prescott*, 5 Cush. 67. *Morgan* v. *Ide*, 8 Cush. 420. *Barrett* v. *Malden & Melrose Railroad Co.* 3 Allen, 101. *Manning* v. *Albee*, 14 Allen, 8. *Bradley* v. *Poole*, 98 Mass. 179.

The principal ground of objection to the plaintiff's recovery is that the agreement is within the statute of frauds as a con‑ tract for the sale of lands, and so void. The agreement, as set forth in the special count, seems to be obnoxious to that objection. But there being also a count for money paid by the plaintiff to the use of the defendant and at his request, we must look at the facts of the case to see whether, as the question was presented to the jury, the verdict can be sustained. It appears that, in the arrangement for the purchase of the interest in lands, there were four persons concerned as parties. The contract upon which this action is brought was between the plaintiff and the defendant only. It related to the proposed purchase; but its connection therewith was merely collateral. Separated from the principal agreement, as it may be, and, for the purposes of enforcement, must be, on account of the diversity of the parties, it becomes simply, upon one side, a promise to advance money for another, at his request; and, on the other, an express promise to repay it. The money having been advanced, the obligation to repay becomes a debt, which may be enforced by an action upon the express promise, or by the general count for money paid.

The case, however, was submitted to the jury upon a some‑ what different aspect. The court instructed the jury " that if the plaintiff proved, to their reasonable satisfaction, that he and the defendant agreed to join in the purchase, and to pay for the property in question, and that for the convenience of the parties the payment was to be upon drafts upon the plaintiff, of which drafts the defendant was to pay one half; and if the property was bought under this agreement, and the drafts were presented to and accepted by the plaintiff, before any notice from the de‑ fendant that he refused to pay his half of them or go on any further in the enterprise of buying the property with the plain‑ tiff; and if the plaintiff proceeded to pay them according to his

acceptance; he was entitled to maintain his action." So long as such an agreement continued unexecuted, it was within the statute of frauds, and liable to be avoided for that reason. The defendant might have revoked his request to the plaintiff to make advances for him, and thus terminated all liability on his part. But advances made under a voidable agreement for the purchase of land are made upon a good consideration, and cannot be recovered back, unless the contract be rescinded by the refusal or failure of the other party to convey. *Coughlin* v. *Knowles,* 7 Met. 57. If, therefore, the plaintiff made such advances for the defendant, before his request to do so had been revoked, he may recover the amount so advanced, under the general count for money paid. The statute of frauds does not apply to such an action, whether brought upon the implied or upon an express agreement. The obligation to repay money advanced for the use of the defendant is independent of the character of the consideration upon which the advance is made, provided it be not illegal. And if an express promise to that effect be separable from the principal agreement to which it is incident, it may be enforced, although the principal agreement might be avoided. The fact that a certain stipulation is made at the same time, and forms a part of an arrangement for the sale of an interest in land, does not prevent an action from being maintained upon it; provided, 1st, that the action does not tend to enforce the sale or purchase of the interest in land, and 2d, that, in other respects, the stipulation is susceptible of being separately enforced by action. Such stipulations, collateral to the sale, but contained in the same contract, have been repeatedly enforced in this Commonwealth. *Pierce* v. *Woodward,* 6 Pick. 206. *Page* v. *Monks,* 5 Gray, 492. *Brackett* v. *Evans,* 1 Cush. 79. *Preble* v. *Baldwin,* 6 Cush. 549.

The plaintiff's acceptance of drafts for the purchase money fixed the rights and obligations of the parties from that time, and the defendant was no longer at liberty to revoke his request. The instructions required the jury also to find that the property was bought before any notice from the defendant of his intention to revoke.

It has always been held in this Commonwealth that, when all parts of the agreement which affect the obligation of either party to purchase or sell any interest in land have been fully performed, the remaining obligations are no longer within the statute, although they may have been so while the contract continued executory. *Wilkinson* v. *Scott*, 17 Mass. 249. *Nutting* v. *Dickinson*, 8 Allen, 540. *Basford* v. *Pearson*, 9 Allen, 387. The statute is satisfied by the voluntary performance, by the parties, of those undertakings of which it required written evidence. This principle was applied to cases somewhat like the present, in *Davenport* v. *Mason*, 15 Mass. 85, and *Trowbridge* v. *Wetherbee*, 11 Allen, 361.

The property was purchased, not to be held by either the plaintiff or the defendant, but was to be taken for the basis of a mining corporation. The interest which the plaintiff acquired, and in which, by the agreement, the defendant was to share, was an interest in the stock, or proceeds of the stock, of such corporation. The purchase of the interest in real estate was a step only towards the performance of the whole agreement, and was completed before the defendant gave notice of revocation.

It is held by some of the English authorities that the consideration agreed by parol to be paid for a conveyance of real estate can be recovered only upon a subsequent independent promise; the moral obligation and the previous voidable contract answering as a consideration for the new promise. *Cocking* v. *Ward*, 1 C. B. 858. *Kelly* v. *Webster*, 12 C. B. 283. *Buttemere* v. *Hayes*, 5 M. & W. 456. This doctrine may result in a measure from the rule, which is there established, that the consideration of an agreement, within the statute of frauds, must be set forth in the writing, as well as the promise. However that may be, the English authorities upon that subject have not been very closely followed by our courts. It was early decided, in *Packard* v. *Richardson*, 17 Mass. 122, that the consideration need not be set forth in the writing to be enforced, but might be proved *aliunde;* and it is now so provided by the statute itself. Rev. Sts. *c.* 74, § 2. Gen. Sts. *c.* 105, § 2.

Upon the whole, the court are all satisfied that the promise to

repay money, to be advanced by the plaintiff at the defendant's request, although that money was advanced for the purpose of making a purchase of real estate, and upon an oral agreement to that effect, is not of itself "a contract for the sale (or purchase) of lands;" and, if the money be in fact advanced before the request is revoked, an action upon such a promise is not an action forbidden by the statute. ·

The cases cited by the defendant upon this point are mostly suits to enforce rights which the purchaser claimed to have acquired in the real estate under a parol agreement. The decisions are uniform in that respect.

If the arrangement be regarded as one of partnership, it would make no difference. A promise to repay money advanced by one partner for another partner, to make up his share of the joint capital, or for any other special purpose, aside from the transaction of partnership business, may be recovered without waiting for dissolution and settlement of the final balance. *Gardner* v. *Cleveland*, 9 Pick. 334. *Williams* v. *Henshaw*, 11 Pick. 79. *Rockwell* v. *Wilder*, 4 Met. 556.

The refusal of the defendant did not impose upon the plaintiff the duty to manage the property purchased in any different manner from that contemplated by the arrangement under which it was purchased. If he had disposed of it otherwise, or converted it in any way to his own exclusive use, he would undoubtedly be obliged to account for the proceeds; and the defendant might require his share to be applied towards the claim of the plaintiff against him. But that would be matter of defence. We see nothing in the case which should require the plaintiff to do more than he has done, in the way of holding the property and offering to transfer his share to the defendant, in order to maintain his action. The rulings and instructions of the court seem to us to be in all respects sufficient and proper. *Exceptions overruled.*