MICHAEL HURLEY *vs.* JEREMIAH W. DONOVAN.

Suffolk. January 9, 1902. — September 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Frauds, Statute of. Practice, Civil,* Amendment.

The plaintiff, owning certain land subject to a first mortgage, borrowed a sum of money from the defendant on a second mortgage, and later the defendant orally agreed that if the plaintiff would convey the land to him absolutely he would pay the interest on the first mortgage "for a while" and would reconvey the land as soon as the plaintiff found the money to pay him and that he would wait for his own interest and keep the first mortgage interest paid until the plaintiff "made a sale or could raise a loan." Upon this promise the plaintiff conveyed the land to the defendant. The plaintiff negotiated an advantageous sale of the land but the defendant prevented its being carried out by refusing to reconvey the land unless paid a large sum of money in excess of the sum lent by him to the plaintiff. The defendant failed to pay the interest on the first mortgage, and the plaintiff brought a bill in equity against the defendant to compel the reconveyance of the land, and, to save his property from foreclosure, sold it for a price much lower than he previously had arranged for. The plaintiff obtained a decree, and the defendant in obedience to it conveyed the land on payment of the amount found by the court to be due to him, the plaintiff in turn conveying the land to the purchaser. The plaintiff then brought an action at law with a count in contract to recover the difference between the true value of the land and the price for which the plaintiff had been forced to sell it, and with a count in tort for slander of title to recover the same damages. To both counts the defendant set up the defence of the statute of frauds. *Held,* that the statute was a bar to recovery on either count, that, as to the count in contract, the agreement to reconvey on payment of the money lent with interest was a contract for the sale of land within Pub. Sts. c. 78, § 1, cl. 4, and the agreement to pay the interest on the first mortgage until the reconveyance was made was part of the same inseparable contract; that, without deciding whether the plaintiff could sue twice, first for the land and a second time for the damages, he at any rate could not stand any better in his action at law than if he had included his damages in his previous suit in equity, and that the compulsory conveyance made by the defendant in obedience to a decree of the Superior Court did not put the plaintiff in the same position as if the defendant had voluntarily per-

formed the agreement so far as it was within the statute of frauds. As to the count in tort for slander of title, the plaintiff could not show that he had a title without proving the oral agreement which the statute of frauds did not allow to be proved. BARKER, J. dissenting, on the grounds, that the contract was severable and the defendant's agreement to pay the interest on the first mortgage was susceptible of separate enforcement, and that under the count for slander of title the plaintiff's equitable interest in the land could be shown notwithstanding the statute of frauds.

Under Pub. Sts. c. 167, § 42, an amendment setting up the statute of frauds may be allowed after a trial has begun.

CONTRACT with three counts alleging breaches of the agreement stated by the court and a count in tort for slander of. title. Writ dated October 21, 1898.

In the Superior Court the case was tried before *Maynard*, J. The answer to all the counts was a general denial. On the second day of the trial the defendant was allowed to amend his answer by setting up the statute of frauds. The plaintiff excepted to the allowance of the amendment.

The question to the plaintiff referred to in the last paragraph of the opinion of the majority of the court, the exclusion of which became immaterial, was as follows: " *Q.* How long had the negotiations or talk been going on between you and Mr. Burnett before you had made the agreement?" This was objected to by the counsel for the defendant. The counsel for the plaintiff then stated that he wished to show " that Mr. Burnett had been negotiating with Hurley with regard to this property right along, and that of course he took advantage of the position that Hurley was in, in consequence of his relations with Donovan." The judge excluded the question and the plaintiff excepted.

At the close of the plaintiff's case, the judge on motion of the defendant ordered a verdict for the defendant; and the plaintiff. alleged exceptions.

The case was argued at the bar in January, 1902, and afterwards was submitted on briefs to all the justices.

*E. Lowe*, for the plaintiff.

*F. N. Nay*, (*L. M. Abbott* with him,) for the defendant.

LORING, J. The principal question in this case is whether the presiding judge was right in directing a verdict for the defendant, and we are of opinion that he was.

The statement of the case made in the bill of exceptions is in some respects obscure, but on the evidence there set forth the

jury could have found that the plaintiff, in July, 1895, became the owner of some sixteen acres of land on which there was a stone quarry and a dwelling house. The plaintiff was an ignorant man who could not read and, beyond writing his own name, could not write. He lived on the land and worked the quarry in getting out broken stone for making roads. When he bought the quarry in 1895 he borrowed $5,000 and gave a first mortgage on the property for its repayment to a co-operative bank; in May of the next year, he borrowed $1,500 of the defendant, at two per cent a month, on a second mortgage; later in the same year, he borrowed of the defendant $200 more at the same rate, and later still, having no property except the quarry and the horses and carts used by him in connection with it, and his work being slack, he told the defendant of his situation and asked him if he would pay the interest on the first mortgage for him " for a while," and the defendant " said he would if he would deed him the property, and that he would deed it back as soon as Hurley found the money to pay him, and would wait for his own interest and keep the bank interest paid until Hurley made a sale or could raise a loan." This promise was accepted by the plaintiff, and in pursuance of the agreement thus made he conveyed the quarry to the defendant by an absolute deed dated October 13, 1896. In February, 1897, the plaintiff had an offer to sell the quarry to a corporation organized in Maine, for $10,000 in cash and $15,000 in stock; the plaintiff told this to the defendant but the defendant said that he wanted $4,000 and stated that "$4,000 is my price, if you want the property deeded back." The plaintiff refused to pay the $4,000, and in consequence the sale to the company fell through. The plaintiff then brought a bill in equity setting up that the deed was in fact by way of security, and offering to redeem by paying all sums due the defendant. At some time the plaintiff secured an agreement for a loan of $12,000 on the property, but the defendant refused to convey it to him unless the $4,000 was paid, and in consequence the plaintiff was not able to carry through this agreement. Further, the defendant did not pay the interest due on the first mortgage, and this coming to the knowledge of the plaintiff a few days after he filed his bill, to save his property from being sold under a foreclosure of the first mortgage he sold it to one Burnett for $10,200.

The agreement to sell to Burnett was made on February 20, three days after the bill in equity was filed, and the quarry was conveyed to him on the same day, Burnett agreeing to pay the first mortgage and all sums found by the court to be due to the defendant not exceeding in all $10,200, settlement to be made immediately after the disposal of the suit in equity. There was evidence from which the jury might have found that when the bill was filed and the sale was made to Burnett the defendant claimed to own the quarry and not to hold it as security; and there was also evidence from which it could have been found that the real value of the property was from $15,000 to $30,000. Burnett himself testified that $10,200, the price paid by him, was not all the property was worth.

The defendant in his answer to the bill in equity did not claim that he was the owner of the property but set up that by the terms of the oral agreement the quarry was to be sold by him and that he was to retain out of the proceeds $4,000 in addition to the sums lent by him to the plaintiff, and that he was to pay the balance to the plaintiff. It was found in the suit in equity that the plaintiff on February 17, 1897, offered to pay the defendant for all sums due him and that the amount due him on that day was $1,832.80; that the deed was in fact given by way of security, and that on payment of $1,832.80 the defendant should convey the property to the plaintiff.

This conveyance to the plaintiff was made on April 5, 1898, and the plaintiff conveyed the property to Burnett under the agreement with him. On October 21, 1898, this action was begun.

In this action there are four counts in contract and one in tort. In the counts in contract the plaintiff seeks to recover damages for breach of the defendant's agreement to keep down the interest on the first mortgage until the plaintiff should find a purchaser for the property, and to convey it to the plaintiff on being paid for the loans made by him with interest. The damages which the plaintiff seeks to recover in those counts are the difference between the true value of the property and $10,200, the price received from Burnett. The plaintiff seeks to support his action of tort as a count for slander of title, and to recover the same damages under that count. It appeared in evidence

that all the transactions between the plaintiff and defendant were by word of mouth, except the conveyance of October 13, 1896, and in this action the defendant sets up the statute of frauds in defence to all five counts.

One of the objections raised by the defendant is that by bringing his bill to recover back the land the plaintiff elected to treat the contract as rescinded, and that he cannot now sue for damages for breach of the agreement. Whether the bill in equity went on the ground that the defendant had set up that the oral agreement was unenforceable and sought a remedy outside the oral contract, or on the ground that the plaintiff wished to compel specific performance of the contract made by word of mouth, is not clear. The defendant in his answer to the bill in equity did not set up the statute of frauds nor did he claim the rights given him under the absolute deed; but contended that by the terms of the oral agreement he was to have $4,000 in addition to the money lent with interest. So it cannot be said that this preliminary objection has been made out.

There is a further technical objection, although it has not been relied on, namely, the objection that the defendant has been subjected to two actions on the same transaction. But we prefer to dispose of the case at bar on its merits, without considering these matters.

We are of opinion that the statute of frauds is a defence to all the counts.

So far as the counts in contract are concerned, the agreement to reconvey the land on payment of the money lent with the interest stipulated for, is plainly an agreement for the sale of land within Pub. Sts. c. 78, § 1, cl. 4, on which, by the terms of that act, " no action shall be brought." The agreement to keep down the interest on the first mortgage cannot be sued on as a separate part of a divisible contract. *Irvine* v. *Stone*, 6 Cush. 508. *McMullen* v. *Riley*, 6 Gray, 500. *Gould* v. *Mansfield*, 103 Mass. 408. *Dowling* v. *McKenney*, 124 Mass. 478. It does not come within the cases in which such a recovery has been allowed. Where the plaintiff has done work in consideration of the defendant's promising to do two things, the promise to do one being valid, the promise to do the other being within the statute of frauds, it has been held that the plaintiff can, if he chooses, forego

all rights by reason of having been promised the two things, and enforce the performance of the one for which the promise is valid, as in *Rand* v. *Mather*, 11 Cush. 1. There are other cases where there is a contract containing "several stipulations, having reference to distinct objects, and imposing distinct duties, some of which can and some cannot be enforced," in which it has been held that one of the separate contracts not within the statute can be enforced although some are within the statute and cannot be enforced, as in *Friend* v. *Pettingill*, 116 Mass. 515. But in the case at bar the promise is part of one inseparable contract, namely the contract to reconvey the land on being paid the money lent, and until then to keep down the interest on the prior incumbrance. It is like an agreement to buy a cargo of coal and pay for its transportation from Philadelphia to Boston, which was under consideration in *Irvine* v. *Stone*, 6 Cush. 508, and like the agreement to sell flats and fill them to a specified grade, and to sell land and pay a sewer assessment, in question in *Page* v. *Monks*, 5 Gray, 492, and in *Carr* v. *Dooley*, 119 Mass. 294. In such cases, so long as the part of the contract within the statute of frauds is unexecuted, no part of the contract can be enforced, as was held in *Irvine* v. *Stone*, 6 Cush. 508; on the other hand it has been held that when the parties have voluntarily executed the part which is within the prohibition of the statute, the promise to do something not within the statute made in consideration of that which is within the statute can be enforced. *Page* v. *Monks*, 5 Gray, 492. *Carr* v. *Dooley*, 119 Mass. 294. And see *Wetherbee* v. *Potter*, 99 Mass. 354. Had the defendant in the case at bar voluntarily reconveyed the land, but omitted to pay the interest on the first mortgage, the plaintiff could have recovered for breach of that agreement, if it is conceivable that any damage could have been suffered from the breach of that agreement as a separate contract under those circumstances. But in these cases, so long as the defendant does not voluntarily perform the part of the agreement, which is within the statute, no action can be brought on the promise, which is not within the statute and which is an inseparable part of one contract, as was decided in *Irvine* v. *Stone*, 6 Cush. 508, and *McMullen* v. *Riley*, 6 Gray, 500, where no part had been performed; and as was laid down in *Page* v. *Monks*, 5 Gray, 492, 496, and

*Wetherbee* v. *Potter*, 99 Mass. 354, 361, where the part which could not be enforced had been performed.

In the case at bar, it is plain that the plaintiff cannot stand any better by suing twice, once to recover the land and a second time to recover the damages. Whether he can sue twice or not we do not decide; but if he can sue twice, he cannot stand any better in the second action than if he had included his claim for damages in his first suit. The compulsory conveyance made by the defendant in obedience to a decree of the Superior Court in the suit in equity does not bring the case within *Page* v. *Monks* and *Wetherbee* v. *Potter*, and put the plaintiff in the same position as he would have been in had the defendant voluntarily performed the agreement so far as it was within the statute of frauds.

It remains to dispose of the count in tort. Assuming in favor of the plaintiff that this count contains the necessary allegations of a count for slander of title, we are of opinion that here also the statute of frauds is a defence. The ground on which it is contended that the plaintiff has a title, is that, if the defendant had refused to perform the agreement after the plaintiff had conveyed the land to him by an absolute deed and had set up that that agreement was not enforceable, equity would have compelled the defendant to reconvey the land on the plaintiff's paying the money for which the land was to be security; whether in such a case equity enforces the oral agreement or gives a remedy outside that agreement is not material. In such a case equity compels the defendant to reconvey the land on payment of the money due to the plaintiff, to prevent the commission of a fraud by retaining property, obtained under an oral agreement within the statute, without paying for it. *Glass* v. *Hulbert*, 102 Mass. 24, 35, 36. *Campbell* v. *Dearborn*, 109 Mass. 130. *Maddison* v. *Alderson*, 8 App. Cas. 467, 476.

Although the plaintiff in such a case has a right in equity to get back his quarry, he has no title for the slander of which he can maintain an action for damages if the defendant maliciously says that he has not a title. The only title which the plaintiff has in that case is under an oral agreement, and the statute provides that on that oral agreement " no action shall be brought." It is true that it has been decided that equity can prevent the

grantee from keeping the property without paying for it, to prevent the perpetration of fraud; but what the plaintiff now asks is that we should go one step further and cast the defendant in damages because he maliciously denied that the plaintiff had a title under the oral agreement. We are of opinion that we cannot take that step. That would be to enforce indirectly the oral agreement, and what the statute directly forbids cannot be indirectly enforced.

The other two exceptions do not require discussion. The fact that the plaintiff had been negotiating with Burnett for a long time was immaterial in view of the rights of the parties on the merits. It was within the discretion of the presiding judge to allow the defence of the statute of frauds to be set up by an amendment after the trial had been begun. Pub. Sts. c. 167, § 42.　　　　　　　　　　　　　　*Exceptions overruled.*

BARKER, J. In my opinion the defendant's agreements did not constitute a contract entire in its nature. His promise to pay the monthly dues to the co-operative bank was severable from that to reconvey the land, and was susceptible of separate enforcement upon its breach. An action for breach of his promise to pay the dues would not tend to enforce his promise to reconvey. Hence it was wrong to order a verdict for the defendant on the second count which contains a good allegation of a breach of the agreement to pay the dues and of damages by reason of such breach. *Page* v. *Monks*, 5 Gray, 492, 495. *Wetherbee* v. *Potter*, 99 Mass. 354, 361. Again, the plaintiff's right in equity to compel the defendant to reconvey the land upon payment of the amount due him was an equitable title or interest in the land. The statute of frauds is not a rule of evidence and does not forbid proof of an equitable interest so arising. The owner of an equitable interest in land may have an action of tort for slander of his title for injury done him by maliciously denying his interest or title. Odgers, Libel & Slander, (1st Am. ed.) 138 and note by Mr. Bigelow. Therefore it was not right to order a verdict for the defendant on the count in tort.