HENRY DAILEY & another *vs.* BERNARD A.
DOHERTY, JR., & others.

Bristol.    October 25, 1920. — January 24, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Equity Jurisdiction*, Accounting, Laches.    *Mortgage*, Of real estate.    *Interest.*
*Equity Pleading and Practice*, Answer.    *Trust.    Notice.*

Acting under an oral agreement of a savings bank, which held a first mortgage upon
certain real estate, with one who held a second and a third mortgage thereon and
with the owner of the real estate, the holder of the second and third mortgages
managed the property in behalf of the mortgagees, collected rents, paid ex-
penses and turned over to the savings bank from time to time the net receipts,
which were to be applied by it to the payment of taxes, of interest on the mort-
gage notes and of the principal of the notes in an order determined by the
bank's treasurer.    The rents were collected by a sister of the owner for the
managing mortgagee and were deposited in an account in a national bank in
the name of the owner, followed by the designation, "Trustee," upon which
checks were drawn "only with the sanction" of the managing mortgagee.
The owner died in January, 1917, and the national bank then had $149 on
deposit in the account standing in his name as trustee.    The sister of the owner
continued to collect the rents under the direction of the managing mortgagee.
She did not however deposit them under the managing mortgagee's direction,
but gave them to an agent for herself, her sisters and the widow of the former
owner.    The agent in April, 1917, was appointed administrator of the owner's
estate and placed in an account in his name as such administrator the money
thus previously turned over to him by the sister and further collections there-
after made by her, and the national bank paid to him a sum then on deposit
with it in the account standing in the name of the former owner as trustee,
which the administrator received "in good faith and without knowledge of any
arrangement," and used it in whole or in part in payment of bills against the
estate.    In August, 1917, the savings bank foreclosed the first mortgage by sale
under the power therein, and the holder of the second and third mortgages
purchased the property and in June, 1918, $5,000 still being owed to him,
brought a suit in equity in the Superior Court against the savings bank and the
administrator, both as administrator and individually, for an accounting as to
sums received before the foreclosure, at the hearing of which it was not
claimed that anything remained due to the savings bank as first mortgagee or
for taxes paid, and it appeared that the administrator had paid repair bills
and water rates upon the property, although the amount was not in evidence.
The savings bank in its answer, without alleging ignorance as to the ownership
of the fund in its hands, contested liability.    A decree was entered dismissing
the bill and the plaintiff appealed.    *Held,* that
    (1) The entire beneficial interest in the fund in the hands of the savings bank
was in the plaintiff, and the bank held it subject to the oral agreement with

the plaintiff and the owner of the property, which was not terminated by the death of the owner;

(2) The plaintiff's right to receive the money in the hands of the savings bank was not barred by the statute of frauds;

(3) The plaintiff was entitled to a decree directing the savings bank to deliver to him the fund in its possession, and that that bank, owing to the fact that it contested liability, should pay interest thereon from the date of the filing of the bill;

(4) The fact, that the account in the national bank stood in the name of the former owner as trustee, fixed the administrator with notice of the agreement under which the deposit was made;

(5) At the time of the filing of the bill, the plaintiff was entitled to the amount received by the individual defendant from the national bank, less any expenses properly chargeable thereon;

(6) The amount disbursed by the individual defendant from the fund received by him from the national bank not having been ascertained, the suit was remanded to the Superior Court to determine what part, if any, of that fund should be paid to the plaintiff;

(7) There was no unreasonable delay in bringing the suit;

(8) The agreement under which the rentals were collected ceased to be of binding force on the death of the owner, and the plaintiff was not entitled under it to claim any of the amounts so collected thereafter.

BILL IN EQUITY, filed in the Superior Court on June 17, 1918, and afterwards amended, against Bernard A. Doherty, Junior, individually and as administrator with the will annexed of the estate of John F. Sullivan, late of Fall River, and the Citizens Savings Bank of Fall River, for an accounting.

In the Superior Court the suit was heard by *Morton*, J., a commissioner having been appointed under Equity Rule 35 to take the testimony. Material facts found by the judge are described in the opinion. By order of the judge, a final decree was entered dismissing the bill; and the plaintiffs appealed.

*C. R. Cummings,* (*J. W. Nugent & J. B. Cummings* with him,) for the plaintiffs.

*I. Brayton,* for the defendants.

JENNEY, J. In 1900, John F. Sullivan owned real estate in Fall River, subject to a first mortgage to the Citizens Savings Bank of that city and to second and third mortgages now owned by the plaintiffs, Henry and Timothy Dailey, and then owned by said Henry Dailey and the late James Dailey. The third mortgage, in which James Dailey was mortgagee, provided that the mortgagee might "collect the rents after giving the grantor one week's notice in writing of his intention to do so." Sullivan was

then in default upon all the mortgages and foreclosure was threatened by the first mortgagee.

In that year an oral agreement was made between the bank, Sullivan and James Dailey, who acted for himself as third mortgagee and for himself and his brother Henry as second mortgagees, by the terms of which Dailey was authorized to manage the property in behalf of the mortgagees, collect rents, pay expenses, and turn over to the bank from time to time the net receipts, which were to be applied by the bank in payment of taxes, interest on notes secured by said mortgages, and of the notes in the order determined by the bank's treasurer.

Dailey acted under this agreement until his death in 1906, when his brother Henry Dailey succeeded him; and the agreement continued in force except that the moneys received were deposited in the name of "John F. Sullivan, Trustee," and checked out by him "only with the sanction of Dailey." Elizabeth Sullivan, sister of John F. Sullivan, acted for Dailey in collecting the rents and depositing them in the bank. This agreement remained in force and was performed until Sullivan died on January 18, 1917. At the time of his death, the bank held under this agreement $929.06. It since has paid to Henry Dailey $625.13 of this amount, and the balance is still in its hands. There was then on deposit in the Massasoit-Pocasset National Bank in the name of Sullivan, Trustee, $149.93, which represented money deposited and held under the agreement.

After Sullivan's death, his sister Elizabeth continued to collect the rents under the direction of Henry Dailey, but she neither made returns to him nor deposited the amounts collected in the name of Sullivan, Trustee, but gave therefrom $695.55 to Bernard A. Doherty, as agent for her sisters, Sullivan's wife and herself, who were the owners of the legal title to the equity of redemption in the real estate.

On April 6, 1917, Doherty was appointed administrator with the will annexed of the estate of John F. Sullivan. Elizabeth Sullivan thereafter gave to him $953.30 more, which also had been received by her as rentals. Doherty has transferred both amounts to his account as administrator. The national bank has also paid to him the amount on deposit in the name of Sullivan, Trustee. He received it "in good faith, and without knowledge

of any arrangement, and has credited it, together with the amount in the Citizens Bank," to Sullivan's estate. He did not know or have reason to know previous to December, 1917, that the plaintiffs claimed the deposits in the bank or the rentals, and he acted in good faith in receiving the money and in using it in whole or in part in payment of bills against the estate of Sullivan.

The savings bank foreclosed its mortgage in August, 1917, by sale under the power contained therein, and the plaintiffs purchased the property at the sale. There is a balance of about $5,000 still due under the second and third mortgages.

The plaintiffs now seek the entry of a decree directing payment to them by the savings bank of the amount held by it, ordering Doherty to pay to them the amounts received by him from the national bank as rentals accruing before the death of Sullivan, and also the amounts collected after his death. A commissioner was appointed, and the judge made a finding of facts, which is not controverted except as hereinafter stated. A decree having been entered dismissing the bill, the plaintiffs appealed.

The plaintiffs' right to the money in the hands of the savings bank is first considered. It was received under an oral agreement by which it was ultimately to be applied in payment of the notes secured by the mortgages. It is not claimed that there is anything now due on the first mortgage. It follows, therefore, that the entire beneficial interest is now in the plaintiffs, who are the holders of the second and third mortgages, and who are entitled to the amount and must apply it on the indebtedness secured by the mortgages. Nothing remains to be determined in order to establish the plaintiffs' right thereto. Under the terms of the agreement, the fund is not subject to expenses incurred after it came into the possession of the savings bank except for taxes, and it does not appear that there are any amounts paid for taxes which ought to be deducted therefrom. The savings bank received and held the money under the stated agreement which was not terminated upon the death of John F. Sullivan so far as any rights that had vested prior thereto. *Parker* v. *Parker*, 118 Mass. 110. *Chase* v. *Perley*, 148 Mass. 289. *Portland Steamship Co.* v. *Dana*, 172 Mass. 447. The statute of frauds is not a defence, and it is not so pleaded by the bank. The agreement being oral, no interest in real estate was created thereby.

It was executed when the money was paid to the bank. *Hurley* v. *Donovan*, 182 Mass. 64, 69. *McKee* v. *Lamon*, 159 U. S. 317. *Lyman* v. *Lyman*, 133 Mass. 414. *Lavoie* v. *Dube*, 229 Mass. 87, 88. The authority to manage the property and collect the rents in effect made its possessor the agent of Sullivan for that purpose, and was revoked by his death, because it was not coupled with an interest. *Hunt* v. *Rousmanier*, 8 Wheat. 174.

The savings bank must pay said amount to the plaintiffs. It did not in its answer disclose the circumstances under which it possessed the amount, or aver that it was held for the benefit of such persons as might be decreed to be entitled thereto; but by its answer, irregular in form (*Costello* v. *Tasker*, 227 Mass. 220), without alleging ignorance, it contested liability. This constituted a wrongful withholding of the money from the date of filing the bill, and it is chargeable with interest at the statutory rate from said time. *Goldman* v. *Worcester*, 236 Mass. 319.

Somewhat similar considerations govern the liability of the defendant Doherty for the amount received by him from the national bank. It was there deposited in the name of John F. Sullivan, Trustee, who held it in trust to secure the performance of the agreement; and the amounts so deposited were to be drawn out only with the sanction of James Dailey. The net proceeds were to be applied on the mortgages. It appears that Doherty has paid bills for repairs upon the property and water rates thereon. The judge found that the amount which should be turned over under the agreement had not been determined, and ruled that the plaintiff for that reason could not maintain the bill as to it. He did not find what was due upon an accounting. At the time the bill was filed, the savings bank had ceased to have any interest in the trust fund, and the plaintiffs were entitled to the entire amount less any expenses properly chargeable thereon. The case must be further heard to determine what part, if any, of the money paid by the national bank to Doherty should be paid by him to the plaintiffs.

Doherty cannot defend as to this, either because he received the money in good faith without any knowledge of the agreement under which it was held, or because he has treated it as an asset of Sullivan's estate. The terms of the deposit were sufficient to charge him with notice of the existence of a trust, and placed on

him the burden of ascertaining the actual facts at his peril. *Sturtevant* v. *Jaques*, 14 Allen, 523. *Shaw* v. *Spencer*, 100 Mass. 382. *Loring* v. *Salisbury Mills*, 125 Mass. 138. *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 420. *Jordan Marsh Co.* v. *Hale*, 219 Mass. 495. *Crosby* v. *Simpson*, 234 Mass. 568.

The plaintiffs do not seek to follow the fund and impress a trust upon it in the hands of the administrator.

There was no unreasonable delay on the part of the plaintiffs. Sullivan died on January 18, 1917. His administrator, appointed on April 6, 1917, received the money from the bank immediately thereafter. This suit was commenced on June 17, 1918.

Different considerations control the right of the plaintiffs to receive the rentals collected after Sullivan's death. They claim to be entitled to them because of the clause in the third mortgage authorizing their collection. But it clearly appears that they never acted under that provision. The oral agreement upon which the rentals were in fact collected is inconsistent therewith and was not under and in performance thereof.

The agreement under which the rentals were collected did not give to the plaintiffs any interest in the real estate. It was not a covenant and hence could not run with the land. Even if, as the plaintiffs argue, there was evidence that by its terms it was to continue until the mortgages were paid and hence might remain in existence after Sullivan's death, and even if there was sufficient consideration for such an agreement, because of the claimed promise of the plaintiffs not to foreclose their mortgages, the agreement ceased to be of any binding force when Sullivan died. It did not limit nor control the rights of those who then became the owners of the equity of redemption.

The plaintiffs are not entitled to the rents received after Sullivan's death, and the ruling of the judge to that effect was correct. It is unnecessary to consider whether in any event the plaintiffs' right thereto could be established without joining as defendants those who, when the rents accrued, held the legal title to the equity of redemption.

No question is raised as to the right to equitable relief, or as to the joinder of parties or of causes of action.

The case is to be further heard upon the plaintiffs' right to recover the amount paid by the Massasoit-Pocasset National Bank

to Doherty. The decree dismissing the bill must be reversed, and the case stand for further hearing upon that question.

*So ordered.*